929 F.2d 103
 CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellant,
v.
PULLMAN, COMLEY, BRADLEY & REEVES; Aetna Casualty & Surety
Company; Frederick L. Comley; John S. Barton; Dwight F.
Fanton; Francis A. Smith, Jr.; Samuel A. Gilliland;
Raymond E. Baldwin, Jr.; James W. Venman; William B. Rush;
Robert J. Cooney; David O. Jackson; Herbert H. Moorin;
G. Whitney Biggs; W. Parker Seeley, Jr.; Grove W.
Stoddard; Peter J. Dauk; Douglas A. Strauss; Edward Maum
Sheehy; James B. Stewart; Jeffrey V. McCormick; Peter W.
Oldershaw; Frank B. Cleary; Collin P. Baron; Peter D.
Clark; Michael N. Levelle; Robert Morris; James P. White,
Jr., Defendants-Appellees.
 No. 819, Docket 90-7722.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 11, 1991.
Decided April 2, 1991.
 
 Cushing O. Condon, Ford, Marrin, Esposito & Witmeyer, New York City (D. Jeffrey Burnham, of counsel), for plaintiff-appellant.
 Jacob D. Zeldes, Zeldes, Needle & Cooper, Bridgeport, Conn. (L. Douglas Shrader and Beverly Stauffer Knapp, of counsel), for defendant-appellee Pullman, Comley, Bradley & Reeves and individual defendants-appellees.
 Trudie R. Hamilton, Carmody & Torrance, Waterbury, Conn. (Anthony M. Fitzgerald and William I. Garfinkel, of counsel), for defendant-appellee Aetna Cas. & Sur. Co.
 Before KAUFMAN, NEWMAN and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Plaintiff, the Continental Casualty Company ("Continental"), appeals from an order of the United States District Court for the District of Connecticut (Nevas, Judge ), granting the defendant law firm of Pullman, Comley, Bradley & Reeves ("Pullman") judgment on the pleadings. The district court held that: (1) Continental was not the foreseeable or intended beneficiary of Pullman's legal services in the underlying personal injury litigation; and (2) Continental could not sue Pullman for malpractice under the doctrine of equitable subrogation. Fed.R.Civ.P. 12(c). Continental also appeals the district court's dismissal of its amended complaint (alleging an actual attorney-client relationship) against the Pullman firm for legal malpractice. Building on this claimed legal duty owed to Continental by Pullman, Continental also appeals from the district court's order dismissing the amended complaint against the Aetna Casualty & Surety Company ("Aetna"), the primary insurer in this case.
 
 
 2
 We affirm the order dismissing the complaint against Pullman. We therefore find no need to address the claims against Aetna.
 
 BACKGROUND
 
 3
 In 1984 the Griffin Hospital had to defend a lawsuit arising from the tragic injury suffered by a newborn baby in the hospital's delivery room. Defendant-appellee Aetna provided the primary insurance coverage up to $500,000. Plaintiff-appellant Continental provided the secondary or excess insurance, and was contractually obligated to pay on behalf of Griffin losses exceeding $500,000 up to the policy limit of $20 million.
 
 
 4
 Aetna retained the Connecticut law firm of Pullman, Comley, Bradley & Reeves to defend the hospital in the underlying state court action for medical malpractice. The jury returned a multi-million dollar verdict against Griffin, which was upheld on appeal. Mather v. Griffin Hospital, 207 Conn. 125, 540 A.2d 666 (1988). Continental, as excess insurer, has paid over $10 million in satisfaction of that judgment.
 
 
 5
 In the wake of this staggering verdict, Continental filed a civil complaint against Pullman and Aetna in the Connecticut District Court. Count one against Pullman alleged legal malpractice by the Pullman firm in failing to prepare an adequate defense in the Mather case. Count two against Aetna charged Aetna with a lack of good faith, negligence, and breach of Aetna's duty to provide a competent defense.
 
 
 6
 Pullman moved for judgment on the pleadings. Fed.R.Civ.P. 12(c). The focal point of that motion was whether Continental, as an excess carrier, had any standing to bring a legal malpractice claim against Pullman, who had been retained by Aetna, the primary insurer. In support of its claimed right to sue Pullman, Continental pressed three alternative theories before the district court: (1) that an attorney-client relationship existed between Pullman and Continental because Continental was an intended and foreseeable beneficiary of Pullman's legal services for Griffin; (2) that Continental, by operation of equitable subrogation, was "imbued with the insured's [i.e., Griffin Hospital's] right to sue Pullman for malpractice;" and (3) that an actual attorney-client relationship existed between Pullman and Continental. Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves, 709 F.Supp. 44, 46 (D.Conn.1989).
 
 
 7
 The district court granted Pullman's motion for judgment on the pleadings but gave Continental leave to amend its complaint to plead facts--if possible and in good faith--on the single claim of an actual attorney-client relationship with Pullman. Although the district court certified that order for interlocutory appeal, this court declined to hear the appeal. 28 U.S.C. Sec. 1292(b). Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves, No. 89-8042 (2d Cir. May 19, 1989) (order denying interlocutory appeal).
 
 
 8
 With its appeal foreclosed, Continental exercised its option and filed an amended complaint on the isolated issue of a direct attorney-client relationship with Pullman. Pullman moved to dismiss the amended complaint and, after oral argument, that motion was granted. Fed.R.Civ.P. 12(b)(6). With Pullman now out of the case, Aetna moved to have count two dismissed. Continental, apparently convinced that liability against Aetna could not exist in the absence of a duty from Pullman to Continental, chose not to oppose Aetna's motion. Given that concession, the district court granted Aetna's motion and entered a final judgment in the case, making ready the path for this appeal.
 
 
 9
 On appeal, Continental raises the same arguments to support its malpractice claims against the Pullman firm and its related claims against Aetna.
 
 DISCUSSION
 
 10
 In a diversity case a district court looks to the forum state to select choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Lund's Inc. v. Chemical Bank, 870 F.2d 840, 845 (2d Cir.1989) ("A federal district court deciding a diversity case applies the same choice of law rules as the state courts in the state in which it sits."). Applying Connecticut's choice of law rules under both a tort and contract analysis, the district court rightly concluded that the substantive law of Connecticut applies. See O'Connor v. O'Connor, 201 Conn. 632, 519 A.2d 13 (1986); Whitfield v. Empire Mut. Ins. Co., 167 Conn. 499, 356 A.2d 139 (1975).
 
 
 11
 I. Continental As An Intended and Foreseeable Beneficiary
 
 
 12
 Although a federal court sitting in diversity "must follow the law directed by the Supreme Court of the state whose law is found to be applicable," Plummer v. Lederle Laboratories, 819 F.2d 349, 355 (2d Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987), the district court found, and the parties agree, that the Connecticut Supreme Court has never decided whether an excess carrier may have a claim founded in either contract or tort against a law firm hired by the primary insurer to represent the insured. In the absence of controlling state precedent:
 
 
 13
 [W]e must make our best estimate as to how [Connecticut's] highest court would rule in this case. In making that determination, we are free to consider all the resources the highest court of the state could use, including decisions reached in other jurisdictions.
 
 
 14
 Calvin Klein, Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 195 (2d Cir.1989) (citing Francis v. INS Life Ins. Co. of New York, 809 F.2d 183, 185 (2d Cir.1987) (citations omitted)); see also Plummer, 819 F.2d at 355.
 
 
 15
 Continental's first argument is that it was an intended and foreseeable beneficiary of the legal services rendered by counsel hired by Aetna to defend the Griffin Hospital. Continental contends, therefore, that Pullman owed a duty to Continental, and for breach of this duty Continental has a claim for legal malpractice.
 
 
 16
 Connecticut follows the general rule that "attorneys are not liable to persons other than their clients for the negligent rendering of services." Krawczyk v. Stingle, 208 Conn. 239, 244, 543 A.2d 733, 735 (1988). While Connecticut has recognized some exceptions to this rule in will cases, see Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981) (beneficiaries have claims against attorney who drafted a will which, although valid, provided for benefit shares less generous than the testatrix's expressed intention), Licata v. Spector, 26 Conn.Supp. 378, 225 A.2d 28 (1966) (beneficiaries have a claim against attorney who drafted a will where attorney failed to get the required number of witnesses and, consequently, the will was invalid), that state has been cautious in expanding attorney liability, and has expressed a continuing concern over "the chilling effect of third party intrusion into an attorney's primary duty of loyalty to the best interests of his or her client." Mozzochi v. Beck, 204 Conn. 490, 501, 529 A.2d 171, 176 (1987).
 
 
 17
 The Krawczyk court forthrightly recognized that "[d]etermining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy." Krawczyk, 208 Conn. at 245, 543 A.2d at 735. Acknowledging the exception that permits a third party malpractice claim against an attorney drafting a defective will, Krawczyk framed the issue as "whether such liability should be further expanded to encompass negligent delay in completing and furnishing estate planning documents for execution by the client." Id. Declining to take that next step, the supreme court wrote:
 
 
 18
 In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability.
 
 
 19
 Id. at 245-46; 543 A.2d at 735 (citations omitted). Discomfited over "imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client," id. at 246, 543 A.2d at 736, the court reiterated: "A central dimension of the attorney-client relationship is the attorney's duty of '[e]ntire devotion to the interest of the client.' " Id. (quoting G. Sharswood, An Essay on Professional Ethics 78 (5th ed. 1896)); see Mozzochi, 204 Conn. at 497, 529 A.2d at 174 (the attorney has a "primary duty of robust representation of the interests of his or her client.").
 
 
 20
 We reject appellant's attempt to equate an attorney's "dual representation" of the insurer and insured with that of the testator and his beneficiary. See Novella v. Hartford Accident & Indem. Co., 163 Conn. 552, 573, 316 A.2d 394, 405 (1972) (trial court committed no error in refusing to charge jury that insureds' attorney was also the attorney for the insurer, because the attorney's "primary responsibility was to the insureds and to represent them in accordance with what he considered to be their best interests."). We also agree with the district court's observation that Continental is "hardly a neophyte in these matters;" with multi-million dollar exposure, Continental could monitor the litigation through its own attorneys and assure itself that Aetna was living up to its responsibilities as a primary insurer. It seems clear to us, therefore, that the Connecticut Supreme Court would not find "the primary or direct purpose of the transaction was to benefit the third party." Krawczyk, 208 Conn. at 245, 543 A.2d at 735; see Valentine v. Liberty Mut. Ins. Co., 620 F.2d 583, 584 n. 1 (6th Cir.1980) (direct duty between excess insurer and primary carrier "difficult to conceptualize since there was no contract relation between them.... Formulating a direct duty from [attorney retained by primary insurer] to [excess insurer] is even more difficult.").
 
 II. Equitable Subrogation
 
 21
 Continental makes the alternative argument that, upon satisfying the judgment, it was subrogated to the rights of its insured, the Griffin Hospital, and can thereafter bring any legal malpractice claims against Pullman that Griffin could have brought. Subrogation "is an equitable remedy, the purpose of which is to 'compel the ultimate discharge of a debt or obligation by one who in good conscience ought to pay it.' " Balboa Ins. Co. v. Bank of Boston Connecticut, 702 F.Supp. 34, 36 (D.Conn.1988) (quoting Hartford Accident & Indem. Co. v. Chung, 37 Conn.Supp. 587, 594, 429 A.2d 158, 162 (1981)). A subrogee (Continental) has no right beyond those possessed by the subrogor (Griffin). Connecticut Sav. Bank v. First Nat'l Bank & Trust Co., 138 Conn. 298, 305, 84 A.2d 267, 270 (1951).
 
 
 22
 In the context of primary and excess insurance, it has been noted that "[t]he bulk of the well-reasoned authority ... supports the existence of a duty owed by a primary to an excess carrier." Continental Casualty Co. v. Reserve Ins. Co., 307 Minn. 5, 10, 238 N.W.2d 862, 865 (1976). A few jurisdictions have permitted a direct action by an excess insurer against the primary carrier, rather than limiting it to only those rights available to a subrogee of the insured. See, e.g., Commercial Union Ins. Co. v. Medical Protective Co., 136 Mich.App. 412, 356 N.W.2d 648 (1984), aff'd in part, 426 Mich. 109, 393 N.W.2d 479 (1986); Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co., 93 A.D.2d 337, 462 N.Y.S.2d 175 (1st Dep't 1983), aff'd, 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984); see also Annotation, Liability Insurance: Excess Carrier's Right of Action Against Primary Carrier for Improper or Inadequate Defense of Claim, 49 A.L.R.4th 304 (1986); but see Hartford Accident & Indem. Co. v. Aetna Casualty & Surety Co., 164 Ariz. 286, 792 P.2d 749 (1990) (only a minority of states hold that primary insurer owes direct duty of good faith to excess insurer, rather than through equitable subrogation). In most states, however, the "courts recognize an action based upon equitable subrogation." Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co., 909 F.2d 228, 232 (7th Cir.1990); see also Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co., 699 F.Supp. 732, 737-38 (S.D.Ind.1988), aff'd, 909 F.2d 228 (7th Cir.1990) (the trend is to allow excess insurer to sue primary carrier under doctrine of equitable subrogation for wrongful failure to settle).
 
 
 23
 At least one court has refused to allow an excess insurer to bring a malpractice claim (as subrogee of the insured) against counsel hired by the primary carrier. American Employers' Ins. Co. v. Medical Protective Co., 165 Mich.App. 657, 419 N.W.2d 447, appeal denied, 431 Mich. 856 (1988). The Michigan court refused to recognize such a claim, for to do so would drive a wedge between counsel and the insured to the inexorable detriment of the attorney-client relationship:
 
 
 24
 Although the plaintiff excess insurer may be characterized as an equitable subrogee of the insured physician, it may not sue the insured's defense attorney for legal malpractice. To hold otherwise would in our judgment acknowledge a direct duty owed by the insured's attorney to the excess insurer and would be tantamount to saying that insurance defense attorneys do not owe their duty of loyalty and zealous representation to the insured client alone. Such a holding would contradict the personal nature of the attorney-client relationship, which permits a legal malpractice action to accrue only to the attorney's client. Such a holding would also encourage excess insurers to sue defense attorneys for malpractice whenever they are disgruntled by having to pay within limits of policies to which they contracted and for which they received premiums. Were this to occur, we believe that defense attorneys would come to fear such attacks, and the attorney-client relationship would be put in jeopardy.
 
 
 25
 Id. at 660-61, 419 N.W.2d at 448-49 (citations omitted).
 
 
 26
 Continental places great stock in two New York cases that are said to find a duty of care running from the law firm to the excess carrier. Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co., 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984); Great Atl. Ins. Co. v. Weinstein, 125 A.D.2d 214, 509 N.Y.S.2d 325 (1st Dep't 1986). While both cases recognize that a primary insurer owes a duty to act in good faith to protect the interests of the excess insurer, neither case is as sweeping as Continental suggests. In any event, our concern is not with the progress of New York law, but the state of the law in Connecticut. The Krawczyk decision in Connecticut reflects that state's public policy, and we are persuaded that the Connecticut Supreme Court would not permit a subrogee excess insurer to file legal malpractice claims against the insured's attorney. In so holding, we express no opinion as to any claim Continental might have had against Aetna had Continental not consented to dismissal of its claim against Aetna.
 
 
 27
 III. Attorney-Client Relationship: Pullman-Continental
 
 
 28
 Continental's original complaint alleged that Pullman knew that Continental was the excess carrier and that Continental relied on "the Pullman Firm's professional advice and services as malpractice litigation counsel in the Mather lawsuit." As a result, Continental concludes that the "Pullman Firm represented Continental as excess insurer covering the Hospital for the Mather lawsuit." Embroidering this conclusion, the complaint also states that Pullman conducted all pre-trial and trial work "as counsel for Continental, Aetna and the Hospital." Not surprisingly, the district court found these allegations vague and conclusory, and granted defendants' motion. The district court did, however, allow Continental leave to replead a more precise claim of an actual attorney-client relationship. See Keating v. Carey, 706 F.2d 377, 392 n. 2 (2d Cir.1983) (Meskill, J., dissenting).
 
 
 29
 In its amended complaint, Continental did little to improve the original pleading. Resonating again with bald conclusions, the amended complaint alleged that Pullman "undertook to protect the interests of Continental as well as those of Aetna and the Hospital." To support this claim, the amended complaint pleads that Pullman: (1) communicated with Continental about the progress of the Mather lawsuit; (2) advised Continental so that it would and did offer a settlement; and (3) continued to be Continental's counsel on the appeal.
 
 
 30
 It is interesting that Continental never pleaded--nor could it--that it had a retainer agreement with Pullman for the law firm's services. Admittedly, this is not dispositive since under Connecticut law, "[t]he test of the attorney-client relationship is not who pays the bills, but to whom allegiance is owed." Petrowski v. Norwich Free Academy, 2 Conn.App. 551, 563, 481 A.2d 1096, 1104 (1984) (citing Novella, 163 Conn. 552, 316 A.2d 394), rev'd on other grounds, 199 Conn. 231, 506 A.2d 139 (1986).
 
 
 31
 It is clear beyond cavil that in the insurance context the attorney owes his allegiance, not to the insurance company that retained him but to the insured defendant. 16A J. Appleman & J. Appleman, Insurance Law and Practice Sec. 8839.35, at 108, 108 n. 9.5 (1981). As the Connecticut Supreme Court has written: "The relationship between an insured and attorneys in the legal department of the insurer in respect to litigation against the insured involving the subject matter of the insurance is that of attorney and client, whether or not the insurer employs outside counsel to represent the insured in the lawsuit." Goldenberg v. Corporate Air, Inc., 189 Conn. 504, 509, 457 A.2d 296, 299 (1983), overruled on other grounds, 202 Conn. 660, 522 A.2d 812 (1987). Even though trial counsel is selected by and looks to an insurer for compensation, and although he keeps the insurer "informed about the progress of the case, we do not find those factors to be conclusive. 'An attorney's allegiance is to his client, not to the person who happens to be paying for his services.' " Novella, 163 Conn. at 573, 316 A.2d at 405 (quoting Martyn v. Donlin, 151 Conn. 402, 414, 198 A.2d 700, 706 (1964)).
 
 
 32
 The district court did not err in dismissing the amended complaint against Pullman, finding insufficient facts to support an attorney-client relationship with Continental.
 
 CONCLUSION
 
 33
 For the reasons set forth above, we affirm the district court's dismissal of count one, i.e., Continental's claim against Pullman. As noted earlier, Aetna's motion below to dismiss count two was granted without opposition. Having invited that dismissal, Continental cannot now be heard to oppose the dismissal of count two.
 
 
 34
 Accordingly, the judgment of the district court dismissing the amended complaint is hereby affirmed.