AMERICAN CONTINENTAL
INSURANCE CO.,
Appellant,

v.

WEBER & ROSE, P.S.C., Appellee.

No. 1997–CA–001185–MR.

Court of Appeals of Kentucky.

Nov. 13, 1998.

Discretionary Review
Denied by Supreme Court Aug. 18, 1999.

Harry L. Mathison, Henderson, for Appellant.

Gary M. Weiss, Carl D. Frederick, Karla W. Katakis, Gary M. Weiss, Louisville, for Appellee.

Before GUDGEL, C.J., and GUIDUGLI and SCHRODER, JJ.

*OPINION*

GUDGEL, Chief Judge:

This is an appeal from a summary judgment, dismissing a cross-claim, granted by the Jefferson Circuit Court. The principal issues are (1) whether this jurisdiction should permit an excess insurer to be subrogated to an insured's right to assert a malpractice action against a law firm which the primary insurer employed to represent the insured, and (2) whether such an excess insurer alternatively falls within the class of persons whom the services of the insured's law firm are intended to benefit, such that the excess insurer may maintain a malpractice action against the law firm for damages. As to both of these issues, the circuit court granted a summary judgment in favor of the law firm. Because we agree with the circuit court's conclusions, we affirm.

Bryan Gordon filed a negligence action for damages against the insured, N.K.C. Hospital, Inc. (NKC), concerning injuries he sustained in a fire on NKC's premises. After a trial, the jury returned a verdict in favor of Gordon in the amount of $2,900,-000. NKC was self-insured with respect

to the first two million dollars of the judgment. However, it had in force and effect an excess insurance policy, issued by appellant American Continental Insurance Company (ACIC), which allegedly provided coverage for the remainder of NKC's obligation under the judgment.

NKC appealed, but Gordon's judgment eventually was affirmed by the supreme court, and NKC demanded that ACIC satisfy its liability for a portion of the judgment. ACIC refused and instead filed a declaratory judgment action, seeking an adjudication that it was not liable on the excess policy both because there was no coverage for this particular loss, and because NKC had not given it timely notice of the claim. Appellee law firm Weber & Rose, P.S.C., (Weber & Rose) intervened in the action, seeking declaratory relief adjudicating that it could not be found liable to ACIC for malpractice in connection with its representation of NKC regarding Gordon's claim. ACIC responded by filing an answer and a cross-claim for damages, alleging that Weber & Rose had committed legal malpractice by failing to plead, as an affirmative defense to Gordon's tort action against NKC, the exclusive remedy provisions of the Workers' Compensation Act.

In due course, the court granted Weber & Rose a summary judgment on the ground that it could not be adjudged liable to ACIC for malpractice. The court dismissed ACIC's cross-claim, and this appeal followed.

█ First, ACIC contends that the court erred by refusing to permit it, as an excess insurer, to be subrogated to its insured's right to file a malpractice claim against the law firm which represented the insured. We disagree.

ACIC correctly points out that some courts have held that a primary insurer is liable to an excess insurer for acts of bad faith or negligence which occur during the course of defending the insured. While some of these courts have concluded that a primary insurer owes a direct duty to the excess insurer by virtue of an implied obligation, *see Hartford Accident and Indemnity Co. v. Michigan Mutual Insurance Co.*, 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984), others have instead afforded an excess insurer a right to proceed against a primary insurer by means of a subrogation action. *See Ranger Insurance Co. v. Travelers Indemnity Co.*, 389 So.2d 272 (Fla.App.1980).

In light of the fact that some courts permit excess insurers to proceed against primary insurers for negligence and bad faith, ACIC urges us to follow the lead of Texas courts, which permit excess insurers to also maintain malpractice actions against attorneys employed by primary insurers on behalf of insureds. ACIC argues that doing otherwise discourages an insured from demanding competent counsel, while simultaneously both imposing a burden on the primary insurer and relieving the insured's counsel of liability for legal malpractice. However, while it is true that Texas permits an excess insurer to bring a malpractice action against an insured's attorney based upon subrogation theories, *see American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d 480 (Tex.1992), we are not persuaded that Kentucky should adopt such a course. Indeed, we are convinced that adopting such a rule would be inimical to the preservation of traditional and long-standing concepts associated with attorney-client relationship, as recognized by Kentucky law.

█ An attorney-client relationship is personal in nature. *Automobile Club Insurance Co. v. Lainhart*, Ky.App., 609 S.W.2d 692 (1980). Moreover, it is a fiduciary relationship which imposes upon the attorney the duty to exercise "the most scrupulous honor, good faith and fidelity" to his or her client's interest. *Daugherty v. Runner*, Ky.App., 581 S.W.2d 12, 16 (1978). Our courts are under a duty to protect and preserve this relationship for the benefit of the general public. *See In*

*re Gilbert,* 274 Ky. 187, 118 S.W.2d 535 (1938).

Clearly, given the foregoing principles, allowing excess insurers to maintain legal malpractice actions against insureds' attorneys, based upon theories of equitable subrogation, would undermine this jurisdiction's adherence to a view promoting the preservation of traditional attorney-client relationships. The obvious reasons behind this view are well stated in *American Employers' Insurance Co. v. Medical Protective Co.,* 165 Mich.App. 657, 419 N.W.2d 447, 448–9 (1987), as follows:

> To hold otherwise would in our judgment acknowledge a direct duty owed by the insured's attorney to the excess insurer and would be tantamount to saying that insurance defense attorneys do not owe their duty of loyalty and zealous representation to the insured client alone. Such a holding would contradict the personal nature of the attorney-client relationship, which permits a legal malpractice action to accrue only to the attorney's client.... Such a holding would also encourage excess insurers to sue defense attorneys for malpractice whenever they are disgruntled by having to pay within limits of policies to which they contracted and for which they received premiums. Were this to occur, we believe that defense attorneys would come to fear such attacks, and the attorney-client relationship would be put in jeopardy.

We are particularly persuaded by this analysis because it is consistent with our clearly-defined duty to protect, encourage, and preserve the traditional attorney-client relationship. We hold, therefore, that the court did not err by concluding that ACIC was not entitled to maintain an action for malpractice against Weber & Rose based upon a theory that ACIC was subrogated to NRC's right to maintain such an action.

■ Next, ACIC alternatively contends that the court erred by failing to find, based upon common law concepts, that it was an intended and foreseeable beneficia-ry of the legal services rendered to NKC by Weber & Rose, and that Weber & Rose therefore owed ACIC a legal duty of care and is subject to liability for damages if it is found at a trial to have breached that duty. We disagree.

ACIC had no contractual relationship with Weber & Rose. Moreover, Weber & Rose was retained by NKC to represent it, rather than to represent ACIC, and nothing in the record suggests that NKC was obligated to provide an attorney to represent ACIC's interest in the pending litigation. On the contrary, Weber & Rose's sole duty was to represent NKC's interest. It is clear, therefore, that Weber & Rose's employment was intended only to benefit NKC, and that there is no basis for concluding that the primary or direct purpose of the firm's employment was to benefit ACIC. As ACIC therefore was, at most, only an incidental beneficiary of the contract between Weber & Rose and NKC, ACIC was not owed a legal duty by Weber & Rose which afforded it a basis for a malpractice action.

Our conclusion in this vein is supported by *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103 (2d Cir.1991). That action, like the instant proceeding, involved an excess insurer which attempted to file an action for damages against a law firm employed by the primary insurer to represent the insured. The court rejected the excess insurer's argument, holding that it failed to establish that the hiring of the law firm was primarily and directly intended to benefit the excess insurer's interest in the litigation. As we view the matter, precisely the same situation exists here.

Weber & Rose's employment was not primarily and directly intended to benefit ACIC. Hence, *Albright v. Burns,* 206 N.J.Super. 625, 503 A.2d 386 (N.J.Super.A.D.1986), and *Donald v. Garry,* 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971), are distinguishable on their facts, and ACIC's reliance upon those decisions as

being supportive of its position is misplaced. Similarly, ACIC's reliance on *Hill v. Willmott,* Ky.App., 561 S.W.2d 331 (1978), and *Seigle v. Jasper,* Ky.App., 867 S.W.2d 476 (1993), is also unavailing. Not only are those cases distinguishable on their facts, but in *Hill* the court found that no duty existed, while in *Seigle* it was clear that, unlike the matter now before us, the plaintiff was intended to benefit from the attorney's services. Finally, we are not persuaded by ACIC's assertion that its position is supported by *Restatement (Second) of Torts* § 324(A) (1966), as the cited section concerns cases involving physical harm to third persons, which is simply not the situation herein.

We need not address ACIC's final contention, regarding the issue of whether it may be adjudged liable to NKC on its excess policy, because that claim is still pending in the court below. We note, however, that we do not agree with ACIC's contention that certain statements in the trial court's opinion should be interpreted as amounting to an adverse decision on the merits as to that claim.

For the reasons stated, the order appealed from is affirmed, and this matter is remanded to the circuit court with directions to adjudicate all remaining claims.

All concur.