Janice BAKER, Appellant,

v.

Ronald L. COOMBS, Appellee.

No. 2005–CA–001993–MR.

Court of Appeals of Kentucky.

March 23, 2007.

Robert G. Lohman, Jr., Louisville, KY, for appellant.

Jack E. Ruck, Louisville, KY, for appellee.

Before COMBS, Chief Judge; MOORE, Judge; HENRY,[1] Senior Judge.

## OPINION

COMBS, Chief Judge.

Janice Baker appeals an order of summary judgment of the Jefferson Circuit Court dismissing her professional negligence claim against Ronald L. Coombs. Because we find that Coombs owed no duty to Baker under the facts of this case, we affirm.

In 1989, Baker filed an action for dissolution of marriage against her former husband, James C. Collins, in the Jefferson Circuit Court. They were divorced by a decree entered on December 11, 1990, which incorporated by reference their "Property Settlement Agreement" (filed into the record on December 10, 1990). As part of this Agreement, Collins agreed to pay Baker the sum of $500,000.00 to be paid as follows: a balloon payment of $300,000.00 due by January 1, 2002, and the remaining $200,000.00 due in ten (10) annual installments of $20,000.00 continuing through January 1, 2001. However, the Agreement also provided that if the $300,000.00 balloon payment were paid prior to its due date, any of the remaining $20,000.00 payments would be forgiven. As security for these payments, Baker was given liens on all of Collins's stock holdings in a number of closely-held corporations. Of particular significance for this case, paragraph 11(a) of the Agreement provided that Collins was to "execute all necessary documents to effectuate these liens" and that "[t]he Certificates shall be held by Ronald Coombs, Attorney." Attorney Coombs represented Collins in the divorce proceedings and in a number of other matters.

Despite the terms of the Agreement, Collins never provided any stock certificates to Coombs before he died on September 30, 1999. In his deposition, Coombs testified that although he had asked Collins for the stock certificates at the time that the Agreement was negotiated and after it was signed, Collins never delivered them. Moreover, shortly before Collins's death, Baker discovered that he had apparently sold his interest in his largest corporation, Advanced Care Medicine, in 1992 without perfecting a lien in his stock holdings in that company and making the agreed upon transfer to Baker. Although Baker was unsure of what happened to Collins's other corporations, none of them was listed among the assets of his estate. Baker testified in a deposition that she was never provided with any documents evidencing that the liens had been perfected and that she had no knowledge of whether any liens were ever prepared or presented to Collins. She also could not recall ever making any inquiries as to the liens or as to the stock certificates before Collins's death.

On November 30, 1999, Baker filed a proof of claim against Collins's estate for monies owed to her under the Property Settlement Agreement. The estate objected to the claim. Therefore, on December 22, 1999, Baker filed a complaint against: the estate; Collins's surviving widow, Julie Harris Collins; and Coombs in the Jefferson Circuit Court. In the complaint, Baker alleged that prior to Collins's death, several properties were transferred out of his name in a deliberate effort to prevent the payment of monies owed to her and to reduce the inheritance of his minor child.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

She also alleged that Coombs failed to follow the terms of the Agreement in not holding Collins's stock certificates and that he allowed Collins's businesses to be sold without taking action to assure that Baker be paid what was owed her under the Agreement. She charged that the actions of the defendants were "deliberate attempts" to defeat her claims and to deprive her of monies rightfully owed to her.

Baker was awarded a judgment against the estate on August 6, 2003. Both Baker and Coombs filed cross-motions for summary judgment, and in an opinion and order entered on August 26, 2005, the circuit court concluded that Coombs did not commit professional negligence and that he was not personally liable for any unpaid debts attributable to the Property Settlement Agreement. In reaching this conclusion, the court rejected Baker's argument that Coombs had an affirmative duty to force or to compel Collins to provide him with the stock certificates or—in the alternative—to advise Baker that he could not obtain them. Instead, the court held that the language of the Agreement did not require Coombs to take action to satisfy either of these alleged duties. The court also held that Coombs signed the Agreement only in his capacity as Collins's counsel and not as a party to the Agreement itself. Thus, only Collins and his estate should bear liability for the financial consequences of Collins's failure to perform under the contract. This appeal followed.

On appeal, Baker argues that the circuit court erred in its interpretation of the Property Settlement Agreement and in finding that Coombs committed no acts of professional negligence. Although her brief is not entirely clear on the matter, it appears that she asserts two related grounds in support of her argument: (1) that by agreeing to hold Collins's stock certificates as security for the payments owed to her under the Agreement, Coombs placed himself in the position of becoming a fiduciary to her; and (2) that she should be deemed a third-party beneficiary of Coombs's legal services because he agreed to hold Collins's stock certificates as security for the payments owed to her. Under both theories, Baker contends that Coombs had an affirmative obligation to obtain the stock certificates from Collins, to compel Collins to provide them, or to advise Baker that he had not obtained them.

As a general rule, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rules of Civil Procedure ("CR") 56.03. "Because summary judgments involve no fact finding, this Court reviews them *de novo*, in the sense that we owe no deference to the conclusions of the trial court." *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000). However, in conducting our review, we must consider the record in a light most favorable to the party opposing the motion for summary judgment and resolve all doubts in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

We shall first address Baker's contention that as a result of being mentioned in the Property Settlement Agreement, Coombs owed her a general fiduciary duty to obtain the stock certificates from Collins. At the threshold, we cannot agree any such duty arose solely from the fact that Coombs signed the Agreement because of the mandate imposed upon all attorneys to sign pleadings. Kentucky Rule of Civil Procedure (CR) 11 requires

that "[e]very pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name...."

Apart from CR 11, Baker's argument has some arguable merit because of the unique circumstances of the case—namely, the Agreement's language designating Coombs as the intended holder of the certificates as security for the payments owed to Baker. In effect, Coombs pledged himself as a *de facto* escrow agent on behalf of Baker as to the certificates—despite his representation of Collins. He thereby created or acquiesced in the appearance that a fiduciary duty might have risen. We have carefully reviewed the express terms of the Property Settlement Agreement and have examined persuasive authority from other jurisdictions. As we shall discuss more fully below, we do not believe that such an obligation ever came into being.

Baker argues that Coombs had an affirmative duty to acquire and to hold the stock certificates because the Agreement states that "[t]he certificates shall be held by Ronald Coombs, attorney." She contends that "[s]ince the agreement stated that he *shall* hold the certificates, then it is presumed that he *shall* obtain them." She believes that the mandatory language that Coombs hold the certificates implied a mandatory obligation to coerce his client into complying with the agreement. We shall, therefore, closely examine the literal language of the agreement.

■ "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 384 (Ky.App.2002). Those rules dictate that the parties' intentions be discerned from the four corners of the document itself. Absent ambiguity, extrinsic evidence should not be considered. *Id.* at 385; *see also Hoheimer v. Hoheim-*

*er,* 30 S.W.3d 176, 178 (Ky.2000). Since the interpretation of a contract—including a determination of whether it is ambiguous—is a question of law, we review it *de novo. Cantrell Supply,* 94 S.W.3d at 385; *see also First Commonwealth Bank of Prestonsburg v. West,* 55 S.W.3d 829, 835–36 (Ky.App.2000).

■ The circuit court interpreted the sentence, "[t]he certificates shall be held by Ronald Coombs, attorney," to mean:

only that when and if Mr. Coombs ever obtained physical possession of those documents, he then had an affirmative duty to keep and secure them until such time as the debt owed by his client to Ms. Baker was satisfied.

We are compelled to concur. The Agreement contained no provisions requiring Coombs to take affirmative steps to obtain the stock certificates or to notify anyone that he was not in possession of them. Instead, the plain language of the Agreement obligated Coombs to hold and to secure the certificates once they were placed in his possession; *i.e.,* after Collins had complied with **his** affirmative duty to deliver them to Coombs. In short, any duty owed by Coombs was contingent upon the performance *a priori* of the duty owed by Collins. Baker's belief to the contrary is simply not supported by the literal language of the Agreement. As there is no ambiguity, we cannot construe the Agreement otherwise. *See Cantrell Supply,* 94 S.W.3d at 385.

A strikingly similar situation was presented in the New York case of *Muscara v. Lamberti,* 133 A.D.2d 362, 519 N.Y.S.2d 265 (1987). In that case, the plaintiff entered into a settlement agreement with his former wife. The wife was to repay to the plaintiff the sum of $20,000.00 in exchange for his agreement to allow the wife's new husband to adopt their son. *Id.* at 266. It

was agreed that the wife was to pay this sum into the escrow account of Howard Fensterman, the attorney who was representing the former wife and her new husband in the adoption proceedings. *Id.* After the adoption was finalized, however, the plaintiff discovered that the funds had never been delivered to Fensterman. Consequently, he commenced an action against his former wife and Fensterman to recover the $20,000.00. *Id.*

The plaintiff argued that Fensterman owed him a duty as an escrowee. The New York Supreme Court, Appellate Division, rejected his contention and held that Fensterman never became a fiduciary to the plaintiff because the funds that were the subject of the escrow were never delivered to him. *Id.* at 267. The court further held that "[a]ny duty owed by [Fensterman] to the plaintiff as escrow agent would only have arisen if and when he received the $20,000 from his client in accordance with the agreement." *Id.* The court finally noted that Fensterman could not be held liable for the conduct of the plaintiff's former wife since "[t]he plaintiff was represented by his own counsel during these proceedings and it was the duty of his counsel, not Fensterman, to ensure compliance with the agreement." *Id.* Analogously, we note that Baker was also represented by counsel. However, her counsel made no inquiries about the status of the stock certificates and took no action to compel compliance with the agreement as to their issuance.

We are persuaded that the reasoning set forth in *Muscara* is sound and that it should be adopted in this case. The decision is also consistent with our own case law. Our predecessor court has held that "[t]here can be no escrow without conditional delivery of the instrument to a third person as depositary." *Home Ins. Co. of New York v. Wilson,* 210 Ky. 237, 275 S.W.

691, 693 (1925). Therefore, we conclude that because Coombs never took possession of Collins's stock certificates, his arguable duty to Baker never arose. It remained inchoate and unenforceable. If he had been provided with those certificates, we agree that he would have been obligated to Baker for having voluntarily agreed to assume the fiduciary duties attendant to holding the certificates. *See Schwartz v. Greenfield, Stein and Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582, 584–85 (N.Y.Sup.Ct.1977); *Stewart v. Sbarro,* 142 N.J.Super. 581, 362 A.2d 581, 588 (App. Div.1976).

Baker also argues that she is entitled to relief as a third-party beneficiary of Coombs's legal contract to represent Collins. We cannot determine from the record whether this argument was properly presented to the circuit court—much less preserved for review on appeal. However, because it involves a legal question of considerable consequence, we have elected to consider it. Due to the highly personal nature of the attorney-client relationship, a legal malpractice claim may "accrue only to the attorney's client." *American Continental Ins. Co. v. Weber & Rose, P.S.C.,* 997 S.W.2d 12, 14 (Ky.App.1998), quoting *American Employers' Insurance Co. v. Medical Protective Co.,* 165 Mich.App. 657, 419 N.W.2d 447, 448–49 (1987). Thus, a conventional "legal malpractice" claim against Coombs is unavailable to Baker.

However, an attorney still may be liable for damages to a third party because of events arising out of his representation of a client if the attorney's acts are fraudulent or tortious and result in injury to that third person. *Rose v. Davis,* 288 Ky. 674, 157 S.W.2d 284, 284–85 (1941), *overruled on other grounds by Penrod v. Penrod,* 489 S.W.2d 524 (Ky.1972). Such liability may be found to exist where the attorney is responsible "for damage

caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity[.]" *Hill v. Willmott,* 561 S.W.2d 331, 334 (Ky.App. 1978), quoting *Donald v. Garry,* 19 Cal. App.3d 769, 97 Cal.Rptr. 191 (1971). It is under this theory of liability that Baker brings her claim. The question of whether Baker was a third-party beneficiary requires examining whether Coombs owed her a duty arising out of his representation of Collins. Since it is a question of law, our review is *de novo. Murphy v. Second Street Corp.,* 48 S.W.3d 571, 573 (Ky.App. 2001).

■ Coombs was hired by Collins to represent him in the divorce proceedings against Baker. Such proceedings are adversarial in nature with Collins's interests directly conflicting with Baker's concerns. Absent willful and wanton conduct, fraud, or malice, Coombs owed no corresponding duty of care to Baker as a third-party beneficiary because he had a contractual obligation to represent Collins **against** Baker as the adverse party in the proceedings. "To allow a party to bring a negligence action against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system." *See Hill,* 561 S.W.2d at 335. Numerous sister jurisdictions agree with this reasoning. While Baker claims in her complaint that Coombs's conduct was "deliberate," she cites to no facts in the record to support this contention—much less to establish that it was willful or fraudulent. Baker's mere belief or unsubstantiated claim that the conduct was deliberate is not enough to defeat a motion for summary judgment. *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 3 (Ky.1990).

Even were we to assume, *arguendo,* that Baker could be considered a third-party beneficiary, she would not be entitled to relief because Coombs's employment as counsel for Collins "was not primarily and directly intended to benefit" her. Coombs was employed to represent Collins in an adversarial proceeding against Baker. *American Continental,* 997 S.W.2d at 14; *see also Pelham v. Griesheimer,* 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96, 99 (1982). Thus, we conclude that Coombs owed no duty to Baker as a third-party beneficiary of Coombs's legal representation of Collins.

There is no doubt that Coombs became embroiled in a situation in which there was a potential for him to become conflicted with his own client. We have held that "one may be an agent of both parties to an escrow if there is nothing inconsistent or antagonistic between his acts for the one and the other." *Fisk v. Peoples Liberty Bank & Trust Co.,* 570 S.W.2d 657, 660 (Ky.App.1978). However, questions of divided loyalty may foreseeably develop under the factual situation of this case. The Property Settlement Agreement was generated by adversarial litigation between Baker and Collins. Kentucky's Rules of Professional Conduct emphasize that "[l]oyalty is an essential element in the lawyer's relationship to a client." Kentucky Rules of the Supreme Court ("SCR") 3.130, Rule 1.7, Comment 1. This case presents a clear *caveat* for attorneys to weigh SCR 3.130, Rule 1.7 before embarking upon a similarly perilous course of representation. The rule provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

> (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

> (1) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

A modicum of clear consent could have precluded the litigation that occurred in this case. Having articulated that warning, we affirm the summary judgment of the Jefferson Circuit Court.

ALL CONCUR.