CARLTON, J.,
dissenting:
¶ 58. I respectfully dissent. I would affirm the trial court’s judgment, as I agree with the judgment of the trial judge, Frank G. Vollor, which dismissed the case under Mississippi Rule of Civil Procedure 12(b)(6). Great American E & S Insurance Company (Great American), the excess carrier, lacks standing herein under the facts of this case to raise the claims asserted against the law firm hired by the primary insurer to defend the insured. The majority correctly provides that legal malpractice may exist without privy of contract, and I find no dispute with that proposition as long as an attorney-client relationship exists. An attorney’s malpractice liability is founded upon negligence that arose from the breach of some duty created by an attorney-client relationship; therefore, for such liability to exist, an *468 attorney-client relationship must exist. Creating a cause of action for legal malpractice wherein no privy of contract, nor attorney-client relationship exists, jeopardizes the sanctity of the attorney client-relationship.[9]
¶59. The attorney hired by the primary insurer to represent the insured owed no duty as a result of that attorney-client relationship to the excess carrier Great American. The assertion that an attorney-client relationship allegedly exists between Great American and attorneys for the insured, Quintairos, Prieto, Wood & Boyer P.A. (Quintairos), lacks basis. No such relationship arises merely because the attorneys provided information to the excess carrier that the carrier requested. Moreover, the information in the litigation reports reflects an projection or opinion as to the outcome and not misrepresentation of an existing material fact or legal advice. The Mississippi Rules of Professional Conduct recognize that attorneys communicate and transact with persons other than the client, and the rules set parameters on such communications.[10] In the course of representing a client, a lawyer communicates and transacts with persons other than the client. The comment to Mississippi Rule of Professional Conduct 1.6 recognizes that the attorney is authorized to make disclosures about a client when appropriate to carry out the representation, except to the extent that the client’s instructions or special circumstances limit that authority. Clearly, no attorney-client relationship is created by providing information to a third party upon the third party’s request with no expectation of privacy. Therefore, I submit that the majority errs in finding the existence of an attorney-client relationship because Quintairos provided an estimated settlement value. Quintairos neither provided Great American any legal advice nor professional legal service; instead, it communicated their estimation of the outcome and value of the case wherein they represented the insured.
¶ 60. The excess carrier’s interest is distinct from the insured’s interest, and each interest lies in potential conflict with one another. Such dual representation would necessarily require a knowing waiver of the conflict. Here, Great American, the excess carrier, lacks basis in negligence, contract, or equity to assert that it reasonably relied upon the insured’s trial attorney to also perform in its own best interest as well; therefore, Great American’s claim of status as a third-party beneficiary fails in my view.[11] The trial attorney possessed a duty to provide zealous representation of the insured’s interests. If the excess carrier desired an attorney-client relationship also with the insured’s counsel, then Great American could have negotiated and contracted for such dual representation with appropriate waivers of potential conflicts of interests.
*469 ¶ 61. Great American claims no unequal bargaining power, duress, or fraud. No basis exists in the case for the judiciary to create a cause of action for negligence or equitable subrogation out of whole cloth in this case. Recognizing the conflicts in interest, loyalty, and risk to the insured, Judge Vollor found the following, when he ruled on the motion to dismiss, stating:
This Court concludes that because of the different interest and goals of the primary carrier and excess carrier particularly as to varying risks of recovery with potential damages, it is unwise to require the same counsel to be responsible and liable to both at the same time. To do so would put counsel in a conflict of loyalty and interest. Therefore, the Court declines to extent the doctrine of equitable subrogation and legal malpractice, negligence, gross negligence[,] and negligent misrepresentation to claims of an excess carrier against counsel hired by the primary carrier.
¶ 62. As found in State Farm Fire and Casualty Co. v. Weiss, 194 P.3d 1063, 1066-67 (Colo.Ct.App.2008), I note:
The majority of jurisdictions that have addressed this issue, ten of sixteen excluding Essex [Insurance Co. v. Tyler, 309 F.Supp.2d 1270 (D.Colo.2004) ][12] prohibit the equitable subrogation of professional negligence claims against attorneys. The seven of these ten that prohibit assignment conclude that equitable subrogation is similar enough to assignment that the policies supporting a prohibition on assignments are equally applicable to equitable subrogation. See Capitol Indem. Corp. v. Fleming, 203 Ariz. 589, 58 P.3d 965, 969 ([Ariz.] Ct. App.2002); Great Am. Ins. Co. v. Dover, Dixon Horne, P.L.L.C., 456 F.3d 909, 912 (8th Cir.2006) (Arkansas law); Fireman’s Fund Ins. Co. v. McDonald, Hecht & Solberg, 30 Cal.App.4th 1373, 36 Cal.Rptr.2d 424, 426-30 (1994); Cont’l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103, 106-07 (2d Cir.1991) (Connecticut law); Nat’l Union Fire Ins. Co. v. Salter, 717 So.2d 141, 142 (Fla.Dist.Ct.App.1998); Querrey & Harrow, Ltd. v. Transcont’l Ins. Co., 861 N.E.2d 719, 723-24 (Ind.Ct.App.2007), opinion adopted, 885 N.E.2d 1235 (Ind.2008); Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson, 250 Kan. 490, 827 P.2d 758, 765-66 (1992). The remaining three find similar policy reasons for prohibiting equitable subro-gation of such claims. See Swiss Reinsurance Am. Corp. v. Roetzel & Andress, 163 Ohio App.3d 336, 837 N.E.2d 1215, 1224 (2005) (“Ohio’s zealous guarding of the attorney-client relationship compels a holding that equitable subro-gation is not available[.]”); Am. Cont’l Ins. Co. v. Weber & Rose, P.S.C., 997 S.W.2d 12, 13 (Ky.Ct.App.1998) (allowing equitable subrogation “would be inimical to the preservation of traditional and longstanding concepts associated with attorney-client relationship”); St. Paul Ins. Co. v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir.1991) (In Louisiana, “[ajbsent privity of contract, an attorney may make himself personally liable to third parties only if he exceeds the limits of his agency[.]”).
The jurisdiction that allow equitable subrogation have chosen the shifting of responsibility for loss to the responsible attorney over the potential jeopardy to the sanctity of the attorney-client rela *470 tionship. St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 379 F.Supp.2d 183, 193-96 (D.Mass.2005) (finding that insurer and client interests were aligned and that client had waived its confidentiality privilege); Allianz Underwriters Ins. Co. v. Landmark Ins. Co., 13 A.D.3d 172, 174-75, 787 N.Y.S.2d 15 (N.Y.App.Div.2004); Ohio Cas. Ins. Co., 1999 WL 236733 (Pennsylvania courts elevate “policy of protecting clients’ rights [to competent representation] over the policy of protecting the personal and confidential nature of the attorney-client relationship[.]”); Atlanta Int’l Ins. Co. v. Bell, 438 Mich. 512, 475 N.W.2d 294, 298 (1991) (“to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship”); Am. Centennial Ins. Co. [v. Canal Ins. Co.], 843 S.W.2d [480,] 484-85 [ (Tex.1992) ][13] (under Texas law, finding no new burdens imposed and that attorneys should not be relieved of these obligations merely because the insurer rather than the client must pay); Nat’l Union Ins. Co. [v. Dowd & Dowd], 2 F.Supp.2d [1013,] 1022-23 (In Illinois, subrogation allows the insurer to enforce the duties the attorney already owes to the insured, who might have little incentive to sue because of the insurance coverage; plus the social cost of legal malpractice is best borne by the negligent attorney).
¶ 63. Mississippi Rule of Evidence 502(a)(1) and (5), which the majority uses as its basis for finding an attorney-client relationship, states:
(1) A “client ” is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer which a view to obtain professional legal services from him.
[[Image here]]
(5) A communication is “confidential ” if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
Neither of these sections requires or even suggests that disclosure of “the settlement value” of a lawsuit against a client to other parties would result in a attorney-client relationship with the other nonrepresented party. As I would affirm the judgment of the trial court, I respectfully dissent.
RUSSELL, J., JOINS THIS OPINION.

. See Cont’l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103, 108 (2d Cir. 1991); State Farm Fire Cas. Co. v. Weiss, 194 P.3d 1063, 1066 (Colo.Ct.App.2008) (Unless fraud or malice is involved, a legal-malpractice claim must be based upon an attorney-client relationship.).

. See Rules 4.1 (shall not knowingly make false statement of material fact or law to a third person); Rule 4.2 (communication with a person represented by counsel); Rule 4.3 (dealing with unrepresented person); Rule 4.4 (When representing a client, a lawyer shall not use means that have no other substantial purpose other than to embarrass, delay, or burden a third person or violate rights of such a person in obtaining evidence.).

.Compare 7 Am. Jur. 2d Attorneys at Law, § 238 (2007) (Beneficiaries of a will possess no cause of action against the lawyer for defects in wills and have different interests than the testator).

. In Essex, the “court concluded that if forced to elect between the preservation of the attorney-client relationship and the shifting of the economic burden to the responsible person, the Colorado Supreme Court would choose the former.” State Farm Fire and Cas. Co., 194 P.3d at 1066 (citing Essex, 309 F.Supp.2d at 1274).

. This case is quoted by the majority for a different proposition.