## BLACK v. WIEDEMAN et al.

Court of Appeals of Kentucky.
Nov. 7, 1952.

As Modified on Denial of Rehearing
March 27, 1953.

Wm. S. Black, Lexington, for appellant.

Stoll, Keenon & Park, William B. Gess and M. Don Forman, Lexington, for appellees.

STANLEY, Commissioner.

We have for review the adequacy of a fee allowed the appellant, William S. Black, as guardian ad litem for infant defendants in litigation involving the estate of the late J. D. Purcell, particularly the construction of his will and of three instruments of writing concerning six insurance policies for which he had contracted or had had issued to members of his family, including four named grandchildren. The nature and complexity of the case is reflected in First National Bank and Trust Co. of Lexington v. Purcell, Ky., 244 S.W.2d 458, 459, affirming a judgment favorable to the infants who were represented by their guardian ad litem.

The decedent's estate was assessed for inheritance tax purposes at around $660,000 and the face value of the insurance policies is $285,000. The average earnings of the estate for the first four years after Mr. Purcell's death were around $60,000 a year. The questions were, in the main, whether under the proper interpretation of the will the infant defendants had contingent remainders in the devised trust estate, and whether payment of the premiums on the policies of $15,000 a year should be continued as a charge upon the trust.

The guardian ad litem succeeded in having it adjudged that the infants have a substantial interest in the estate. On the issue as to the insurance, he was opposed by attorneys for two groups of adult parties and attorneys for the insurance company. His exceptions to an adverse report of the Master Commissioner were sustained by the circuit court, and the judgment was affirmed by this court. By this judgment the value of the endowment insurance policies in which the infants were adjudged to have contingent interests was raised from a present value of about $185,000 to the value of $285,000 at maturity in 1957. The administrator, c. t. a., and trustee seem to have occupied a neutral position in these controversies.

The affidavit of the guardian ad litem filed in support of his motion for an allowance of a fee of $6,500 recites with particularity the number of hours he had spent in research, study and preparation of pleadings, briefs and arguments before the Commissioner and the circuit court during a period of two and one-half years. The time was great and the court papers many and voluminous. The affidavits of several attorneys of the Fayette County Bar recite the guardian's legal ability and standing and the services required and rendered by him. They also express cognizance of the resourcefulness and ability of his adversary counsel. The affiants justified their opinions that a reasonable fee would be $6,000 or $6,500. The fruits of the labor and the ability of the guardian ad litem were before us in the record on appeal.

There was no proof of any kind tending to minimize all these things.

The Master Commissioner, in his report on the allowance of a fee, recognized Mr. Black's services at the bar and also referred to the commendation by the trial court in his opinion on the main issue for the conscientious, tireless and capable manner in which he had represented the infant defendants. He stated, however, the record did not clearly show the value of the interests of the infant defendants affected by the litigation. Reviewing a few cases involving fees of guardians ad litem, and, obviously, bringing to bear his knowledge of the record, the Commissioner recommended the

allowance of $2,000. The circuit court confirmed the report, and the appeal is from the judgment of confirmation.

The statement of the Commissioner as to the absence of a clear or definite valuation of the infants' interests seems to rest on the fact that they were contingent upon survivorship. As stated, the guardian ad litem obtained a final judgment continuing the trust instead of having it closed in disregard of the rights of the infants and increased by $100,000 the value of the insurance policies in which they had a special interest. While their rights as a matter of course carried something of a speculative nature because not certain and vested, yet their interests were no less real because contingent. A contingent right of property is valuable according to the circumstances. The maturity of the endowment insurance policies and the termination of the trust in 1957 are now not far off. But we may not measure the infants' rights ten years or so ago in the light of subsequent events which have diminished their present value.

 In our jurisdiction "A guardian ad litem must be a regular, practicing attorney of the court". He is appointed to represent defendants who are under legal disability and is given the duty to "attend properly to the preparation of the case" in their behalf. Sec. 38(2, 3), Civil Code of Practice. In some cases he must be served with summons for those defendants. Sec. 52, Civil Code of Practice. No judgment can be rendered until he has made defense where the wards have no legal guardian or committee. Sec. 36, Civil Code of Practice. It seems that under the common law and perhaps in some other jurisdictions a guardian ad litem need not be an attorney and may employ counsel, but with us it is presupposed that he shall act in the capacity of attorney. His obligation is to stand in the infant's place and determine what his rights are and what his interests and defense demand. Although not having the powers of a regular guardian, he fully represents the infant and is endowed with similar powers for purposes of the litigation in hand. 43 C.J.S., Infants, § 111. He is,

therefore, both a fiduciary and lawyer of the infant, and in a special sense the representative of the court to protect the minor. In the matter of responsibility even for routine action, we are not unmindful of the litigation concerning title to real estate in which the action or omission of a guardian ad litem was involved. So, he occupies a position of trust and confidence toward his ward as well as toward the court.

 The Civil Code of Practice provides that the court shall allow the guardian ad litem a reasonable fee for his services. Affidavits of himself and of other persons are receivable to prove the services rendered, but the court must decide the value without reference to their opinions. Sec. 38(4), Civil Code of Practice. KRS 453.-060 also provides for the allowance of a reasonable fee for a guardian ad litem to be taxed as costs in the action. See Pope v. Lyttle, 157 Ky. 659, 163 S.W. 1121. In the absence of any statutory standard other than that for $5 where nothing is done but to file a report, KRS 453.060, we must look to the methods of evaluating attorneys' fees in general. Staggenborg v. Bailey, 118 Ky. 301, 80 S.W. 1109, 26 Ky.Law Rep. 188. The fixing of the fee by the trial court should also cover an allowance for services in the Court of Appeals. Lacey's Executrix v. Lacey, 170 Ky. 625, 186 S.W. 501. So, upon review of the allowance by the circuit court, we too may bring to bear our own special knowledge of the services. This takes such cases out of the traditional attitude of accepting the finding of the circuit court upon the ground of his greater familiarity with the services of the guardian ad litem.

 We recognize that the matter of fixing attorneys' fees is one of delicacy and difficulty. There is no standard price like there is for unprofessional, personal services or of merchandise or other tangible commodities to be found in business or the market place. No inflexible rule can be applied. The elements to be considered in evaluating an attorney's services or determining his just compensation have been

frequently stated. Axton v. Vance, 207 Ky. 580, 269 S.W. 534; Daly v. Power, 236 Ky. 426, 33 S.W.2d 305; Baxter v. Hubbard, 242 Ky. 751, 47 S.W.2d 743. We have a compendium of the subject and exhaustive summary of specific fees in 143 A.L.R. 672. Of special consideration here are the character of the litigation, the rights in controversy, the nature, duration and extent of the services, and the responsibility, industry, diligence and accomplishment of the guardian ad litem. He represented nine infants by name and as well the "unborn issue" of six adult defendants. In the background lie current economic conditions and the ancient principle that a laborer is worthy of his hire. Price trends and new conditions must be considered. Robbins v. Jones' Ex'r, 211 Ky. 211, 277 S.W. 333. The cost of living and the expense of maintaining a law office have so greatly increased that the cases decided in a day when the purchase value of a dollar was a dollar afford but little persuasive precedents. Close to the instant case is Hamilton v. Nunn, 247 Ky. 715, 57 S.W.2d 655. But, withal, as said by Chief Justice Taft in Re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580, a court, in making allowances for services, should not indulge in any "vicarious generosity."

It is fair to compare the fees allowed in this case to the attorneys for the administrator and trustee. In addition to a fee of $5,000 previously allowed, a fee of $6,000 was claimed and allowed for subsequent services of these attorneys, which seem to have been principally in relation to this litigation, in which, as we have stated, they were neutral. The bank, as administrator, c. t. a., was also allowed a fee of $4,500 plus 2% of the income collected and disbursed, in addition to a previous allowance of $13,000 and the same percentage of previous collections.

Upon a full review we are of the opinion that the guardian ad litem should have been allowed $6,000.

The judgment is reversed for consistent action.