CABINET FOR HUMAN RESOURCES, Commonwealth of Kentucky, Appellant,

v.

S.R.J., E.A.J., S.M.J., and Sarah Barber, Appellees.

Court of Appeals of Kentucky.

March 21, 1986.

Susan Z. McBeath, Frankfort, for appellant.

W.R. Patterson, Jr., Landrum, Shouse & Patterson, Lexington, Sarah V. Barber, Stephen Mershon, Carey M. Arnold, Louisville, for appellees.

Before HAYES, C.J., and CLAYTON and WHITE, JJ.*

CLAYTON, Judge.

This is an appeal in which the Kentucky Cabinet for Human Resources challenges the reasonableness of a $5,962.50 attorney's fee awarded a guardian ad litem as the result of an involuntary termination of parental rights action pursuant to KRS 199.603. On appeal, the Cabinet argues that the trial court erred in awarding this amount as portions of it were incurred for expenses unrelated to the termination action and the hourly rate awarded, $75, exceeds the $40 rate set out in KRS 453.-260(4)(b). In addition, the Cabinet further argues that to permit a guardian ad litem to receive an attorney's fee at prevailing market rates, when other court-appointed attorneys are statutorily limited to vastly lesser amounts, would be a violation of equal protection. We need not reach this later argument, however, as the present dispute can be adequately resolved solely upon appellant's initial two arguments.

On February 3, 1984, the Cabinet filed an action in Jefferson Circuit Court to involuntarily terminate the parental rights of S.R.J. and E.A.J. in their thirteen-year-old daughter, S.M.J. At the time, the severely retarded and handicapped child had been committed to the care of the Cabinet for almost eight years, or since February 23, 1976. Following the filing of the petition, the circuit court appointed appellee, Sarah Barber, to act as the child's guardian ad litem. On April 3, 1984, Barber filed her guardian ad litem report with the court. In it, she notes that S.M.J. was, for eight years, kept in foster care in Louisville at the home of an elderly woman. Following a teacher's complaint that the child had come to school with cockroaches in her clothes, the foster home was closed and S.M.J. moved to a special needs foster home in Rockcastle County, Kentucky. At the time of her arrival, S.M.J. weighed 25 pounds. Barber concluded her report recommending termination of parental rights, with the qualification that the Cabinet, prior to termination, demonstrate that a permanent adoptive placement was available.

In June, 1984, a court order was entered authorizing Barber "to utilize all discovery available under the civil rules to prepare this case for trial." Barber then proceeded to take the depositions of an examining physician, the Rockcastle foster parent, and both natural parents. On October 24, 1984, Barber, in her capacity as guardian ad litem, gave notice to take the depositions of four Cabinet employees: Pruda Bird, a social worker; Sue Chmileuski, a former social worker; Ellen Receveur, a field office supervisor of a foster care team; and Margery Taylor, social services supervisor. Production of all foster care records related to the Louisville foster home was also requested. Appellee guardian's stated purpose for taking this additional discovery involved the possibility of intervening on behalf of S.M.J. in a pre-existing action in federal court based on foster care conditions in Louisville, and the possibility of initiating any other action she felt necessary on behalf of the child.

In response to these notices, the Cabinet, on October 29, 1984, moved for a protective

---

* This decision was reached and the opinion concurred in prior to Judge White's appointment to the Kentucky Supreme Court. Release of the opinion was delayed by administrative handling.

order prohibiting the appellee from taking the depositions. As support for the proposed order, the Cabinet argued that the depositions were irrelevant to the issues involved in termination proceedings, that only Bird and Receveur had any information relevant to S.M.J.'s current foster care conditions, and that it was not obligated to pay the guardian ad litem for services rendered in preparing for other lawsuits. This motion was subsequently overruled on October 30, 1984, with the scheduled depositions being completed by November 8, 1984. On that day, Barber filed an answer for S.M.J. raising as an affirmative defense the allegation that, while in the Cabinet's care, S.M.J. was an abused child under KRS 199.011 as a result of the wanton disregard of its employees. The child's right to counterclaim for damages was then reserved and a request made that the rights of the father not be terminated and that he be appointed next friend for the purposes of any future litigation necessitated by his daughter's damages.

On November 7, 1984, the child's father, E.A.J., in accordance with his earlier intentions expressed during his June deposition, filed an amended answer requesting either custody or liberal visitation. The following day, November 8, 1984, the Cabinet moved to dismiss the termination action citing the desire of E.A.J. to be reunited with his daughter and the availability of assistance in her care from the Department for Mental Health and Mental Retardation. At this point, it should be noted that much energy and emotion has been expended by the parties in asserting their varying versions of the negotiations leading to the November 15, 1984 order dismissing the action of the Cabinet. According to the Cabinet, as early as the fall of 1984, it had been engaged in informal negotiations with Barber for the return of S.M.J. to her father. Barber steadfastly denies this allegation, instead maintaining that she had never discussed this option with counsel for the Cabinet prior to the November 8, 1984 motion. Rather than expend more of our own time attempting to referee this swearing contest, we believe it sufficient simply to state

that our decision does not turn upon either version of these particular events.

Following its motion to dismiss, the Cabinet filed, on November 15, 1984, a pleading styled "reply to counterclaim" (although no counterclaim had been filed). By its "reply" [sic], the Cabinet maintained, as it does now, that appellee guardian's potential counterclaim was unrelated to the present action and that any counterclaim for negligence must be brought before the Board of Claims, KRS 44.070(5). Barber, on November 26, 1984, eleven days after dismissal of the action, filed an affidavit setting out in detail 79.5 hours of services rendered in her capacity as guardian ad litem. Based upon the sworn number of hours expended and a judicially established fee of $75 per hour, the lower court ordered the appellant to pay Barber $5,962.50. In this respect, the trial court clearly erred.

 The powers of a guardian ad litem are not those of a general guardian. As this Court explained in *Goldfuss v. Goldfuss*, Ky.App., 609 S.W.2d 696 (1980),

[t]he obligation of a guardian ad litem is 'to stand in the infant's place and determine what his rights are and what his interests and defense demand. Although not having the powers of a regular guardian, he fully represents the infant and is endowed with similar powers *for the purposes of the litigation at hand.*'

*Id.* at 698 (*citing Black v. Wiedeman*, Ky., 254 S.W.2d 344, 346 (1953) (our emphasis). In the present case, the "litigation at hand" involves KRS 199.603. Under that statute, the primary issues are whether the child involved has been abandoned, neglected or abused, and if so, what action should be taken considering the best interests of the child in light of the statutory criteria of KRS 199.603(3)(a)–(h). In contrast, actions involving allegations of damages arising from the negligence of the Commonwealth, its agencies or officers, fall within the exclusive jurisdiction of the Board of Claims under KRS 44.070(5). The circuit court has no jurisdiction to hear such actions. *Derry*

*v. Roadway Express, Inc.,* 248 F.Supp. 843 (E.D.Ky.1965). Therefore, given the limitations of the role of the guardian ad litem and the limitations on the jurisdiction of the circuit court to decide negligence actions involving a governmental defendant, we conclude that any expenses incurred by the guardian ad litem in preparation of future negligence actions against the Cabinet are not recoverable under the reasonable fee provisions of CR 17.03 or KRS 453.060(2). This does not mean that appellee guardian might not privately recover such fees at some later date as counsel for next friend in a future action before the Board. However, the Cabinet cannot be required to finance the institution of a legally unrelated action against it under the guise of the guardian ad litem statutes. By this holding, we do not suggest that a guardian ad litem is prohibited from recovering a reasonable fee for services rendered in preparing to assert a necessary defense or a compulsory counterclaim. CR 13.03. Our holding is limited only to those situations where the guardian ad litem seeks recovery of fees arising from preparation of future, legally unrelated actions such as those involved. Upon remand, the circuit court, looking to the guardian ad litem's affidavit of services and hours rendered, should exclude any time charged for discovery taken, communications made, documents or records reviewed, travel taken, court appearances made, or research developed with relation to the intended future action against the Cabinet or its employees.

As for the hourly fee rate assessed by the circuit court, we fail to see how such a rate violates KRS 453.260(4)(b). The statute, by its own terms, applies only to final adjudications on the merits and not dismissals by agreement. KRS 453.260(1). Moreover, that same subsection of the statute indicates that the statute applies specifically to those costs that are "in addition to any costs which are awarded as prescribed by statute...." *Id.* Both CR 17.03(5) and KRS 453.060(2) specifically provide for the award to the guardian ad litem of a reasonable fee for his or her services. Therefore, we do not see how KRS 453.260(4)(b) has any application in the present appeal. The proper criteria to be applied in determining the reasonableness of a guardian ad litem fee are as follows: "the character of the litigation, the rights in controversy, the nature, duration, and extent of the services and the responsibility, industry, diligence and accomplishment of the guardian ad litem." *Goldfuss, supra,* at 698 (citing *Black, supra,* at 347). Based upon the record involved and the quality of services rendered, we cannot hold the trial court to have abused its discretion in assessing a $75 per hour fee rate in this particular instance, though we might scrutinize such a rate more closely if it were shown that it was awarded as a matter of routine without consideration of the various factors discussed above. In the present situation, however, we can find no abuse of discretion in assigning a $75 hourly rate.

The order of the Jefferson Circuit Court awarding a $5,962.50 guardian ad litem fee to the appellee attorney is reversed and remanded for calculation of the number of hours of service rendered in accordance with this opinion.

All concur.