RENDERED: MARCH 18, 2010
TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000250-DG

IRA E. BRANHAM;
MILLER KENT CARTER;
AND BRANHAM AND CARTER, P.S.C.

DATE 4-8-70 _Kelly Klaber_ D.C.

APPELLANTS

|  | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | CASE NO. 2006-CA-000322-MR |
|  | PIKE CIRCUIT COURT NO. 04-CI-01190 |

ELIZABETH STEWART (GUARDIAN OF THE
ESTATE OF THE PERSON OF GARY RYAN
STEWART, AN INCOMPETENT PERSON)                                    APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### AFFIRMING

## I. INTRODUCTION.

The trial court dismissed this legal malpractice and breach of fiduciary duty case by granting summary judgment in favor of the defendant-attorney who argued that he owed no legal duty to a minor on whose behalf he had filed and settled a personal injury case. The defendant-attorney asserted that no attorney-client relationship existed between the minor and him because the minor's next friend and statutory guardian retained him to pursue the minor's tort claim. On discretionary review, we hold that an attorney pursuing a claim on behalf of a minor does have an attorney-client relationship with the minor.

And that relationship means that the attorney owes professional duties to the minor, who is the real party in interest.[1] So it is possible for the minor to state a claim for legal malpractice or breach of fiduciary duty against the attorney who has been retained by a person acting as the minor's next friend or statutory guardian. Thus, we affirm the Court of Appeals opinion reversing the summary judgment and remanding for further proceedings.

## II. FACTS.

Gary Ryan Stewart suffered severe injuries in a car accident in which his father and brother were killed. He was a minor[2] at the time of the accident. His mother, Vicky Backus, retained attorney Ira Branham to represent her in three capacities: (1) individually, (2) as Next Friend[3] of Gary Ryan Stewart, and (3) as administrator of the deceased brother's estate in filing tort claims in Pike Circuit Court for the injuries her sons suffered in the accident. Shortly after filing suit in circuit court, Branham represented Backus in Pike District Court[4]

---

[1]  See *Harris v. Jackson,* 192 S.W.3d 297, 303 (Ky. 2006) ("The real party in interest is one who is entitled to the benefits of the action upon the successful termination thereof.").

[2]  Kentucky Revised Statutes (KRS) 387.010(1) defines *minor* as "any person who has not reached the age of eighteen (18)." Stewart was fifteen years old at the time of the accident.

[3]  BLACK'S LAW DICTIONARY (8th ed. 2004) defines *next friend* as "[a] person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian." KRS 387.300(1) establishes the qualifications for a person to sue as next friend in Kentucky.

[4]  See KRS 387.020(3) ("If the minor is not a resident of the Commonwealth of Kentucky, the venue for all proceedings under KRS 387.010 to 387.280 shall be in the county where the real or personal property of the minor is located . . . ."). Because Stewart, a non-resident minor, had a personal property interest in the

2

on her petition for appointment as the statutory guardian[5] of Stewart, who was then still a minor.[6] Backus was required to post a $5,000 bond; but no surety was required.[7]

After her appointment as guardian, Backus settled all tort claims for $1.3 million. Backus and Branham allocated one-half of the total settlement to Stewart and the other half to Backus, individually, and to Stewart's deceased brother's estate. After deducting expenses, apparently Branham paid the net

personal injury action filed on his behalf in Pike Circuit Court, venue for his guardianship proceedings was proper in Pike County, Kentucky.

We also note that Backus was not a Kentucky resident when seeking appointment as, or actually serving as, Stewart's guardian. Without expressing an opinion on whether such statutes were violated, we note that the General Assembly enacted legislation specifically addressing the powers of a "foreign guardian." *See* KRS 387.185. The Kentucky General Assembly also enacted legislation specifically addressing the removal of a ward's property from this Commonwealth by "resident guardians." *See* KRS 387.200.

[5] KRS 387.010(3) defines a *guardian* as "an individual, agency, or corporation appointed by the District Court to have care, custody, and control of a minor and to manage the minor's financial resources." *See also* KRS 387.025 (governing applications for appointment as a minor's guardian); KRS 387.032 (matters to be considered by court when appointing a guardian for a minor).

[6] To avoid any confusion, we note that Backus was appointed guardian of Stewart at that time as a result of his needing a guardian because he was a minor. Years later, after Stewart reached the age of majority, his wife was appointed his guardian by a court in Arkansas after he was judged incompetent to manage his affairs. Because Backus was apparently appointed Stewart's guardian in Kentucky because of his minority rather than any other incapacity, Kentucky statutes specifically dealing with guardians of disabled persons do not seem to be implicated in this case. *See* KRS 387.500, *et. seq.* ("Guardianship and Conservatorship for Disabled Persons").

[7] Although we express no binding opinion on the matter, the district court's failure to require a surety may have been in violation of the governing statute, KRS 387.070, unless certain exceptions applied (which we are unable to ascertain because we do not have the district court's record before us). Both the current and 1998 versions of KRS 387.070 require surety on bonds posted by guardians unless the guardian is the surviving parent of a child nominated as guardian by the deceased parent's will (and the will does not require surety) under KRS 387.040 or the money is deposited in a restricted account under KRS 387.122.

3

proceeds for Stewart's claims to Backus as Stewart's guardian. Backus apparently never filed any accounting in the guardianship proceedings and allegedly dissipated the funds belonging to or intended to benefit Stewart.

During the ensuing years, Stewart reached the age of majority, married, and fathered two children. An Arkansas resident, he filed suit in his own name in Arkansas, alleging that his mother and stepfather, who also lived in Arkansas, failed to transfer to him the money he was awarded in the Kentucky car accident case. A few months later, his wife, Elizabeth Stewart, petitioned an Arkansas court to have Stewart declared incompetent. Stewart had allegedly suffered a head injury in the Kentucky accident that resulted in brain damage. The Arkansas court eventually declared him incompetent and named Elizabeth as her husband's guardian.

Meanwhile, Elizabeth, acting as Stewart's guardian, filed the instant legal malpractice and breach of fiduciary duty case[8] in Pike Circuit Court, alleging that an attorney-client relationship between Branham and Stewart was formed by Branham's representation of Stewart's mother as his Next Friend and Guardian and that Branham breached his duties to Stewart. Discovery commenced; and Branham filed a motion for summary judgment, contending that the claims should be dismissed on two alternate bases: (1) Branham allegedly having no attorney-client relationship with Stewart and, thus, owing

---

[8] The complaint asserted that Branham was directly liable for, and that his former law partner and former law firm were vicariously liable for, legal malpractice, breach of fiduciary duty, conversion of funds, and conversion of case files. It also demanded that Branham account for all funds that he received and disbursed in trust.

4

duties only to Backus and not to Stewart and (2) running of the statute of limitations.[9] Following a hearing, the Pike Circuit Court granted summary judgment in favor of Branham, orally stating that the lawsuit seemed to assert a cause of action that had never before been recognized by Kentucky courts. The trial court indicated an intention to allow the appellate courts of this state to decide whether this cause of action should be recognized before a trial be held on the matter.

Stewart appealed to the Court of Appeals. The Court of Appeals reversed the trial court, holding that an attorney-client relationship existed between Branham and Stewart, the real party in interest. We accepted discretionary review and now affirm the opinion of the Court of Appeals.

## III. ANALYSIS.

### A. Applicable Standard of Review is De Novo.

In reviewing a trial court's grant of summary judgment, we can uphold the summary judgment only if the party opposing summary judgment "could not prevail under any circumstances" at trial, viewing the evidence in the light most favorable to that party.[10] Because factual findings are not at issue and

---

[9] A document purporting to be an agreement to toll the statute of limitations is contained within the record. We express no opinion on whether any claims were barred by the statute of limitations and note that the trial court also did not reach this issue.

[10] *Schmidt v. Leppert*, 214 S.W.3d 309, 311 (Ky. 2007), *quoting Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991) ("Before we examine the trial court's grant of summary judgment on its merits, we must define the proper scope of our review. In assessing the propriety of the trial court's grant of summary judgment to Nationwide, we recognize that summary judgment was appropriate only if Nationwide showed that Schmidt 'could not prevail under any

because the trial court's grant of summary judgment was based on its determination of the legal issue of duty,[11] its judgment is entitled to no deference but must be reviewed under the de novo standard.[12]

### B. Attorneys Retained by a Minor's Next Friend or Guardian Owe Professional Duties to the Minor.

Under Kentucky law, a next friend may bring an action on behalf of a minor.[13] The next friend is the minor's agent[14] under Kentucky law.[15] And the minor is the real party in interest in any lawsuit filed on the minor's behalf by

---

circumstances.' In ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the party opposed to the motion. When we review a trial court's decision to grant summary judgment, we must determine whether the trial court correctly found that there were no genuine issues of material fact.") (footnotes omitted).

[11] *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 848 (Ky. 2005) ("The issue of whether the Grand Aerie had such a duty is a question of law.").

[12] *Leppert*, 214 S.W.3d at 311 ("Since findings of fact are not at issue in this case, the trial court's decision is entitled to no deference."); *see also Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998) ("The construction and application of statutes is a matter of law and may be reviewed *de novo*.").

[13] Kentucky Rules of Civil Procedure (CR) 17.03(1) provides that: "[a]ctions involving unmarried infants or persons of unsound mind shall be brought by the party's guardian or committee, but if there is none, or such guardian or committee is unwilling or unable to act, a next friend may bring the action." *See also Jones By and Through Jones v. Cowan*, 729 S.W.2d 188, 190 (Ky.App. 1987) ("the 'next friend' device is a procedural one by which a minor's claim is brought into court . . . ."); *Cozine v. Bonnick*, 245 S.W.2d 935, 937 (Ky. 1952) (recognizing next friend's authority to bring action on behalf of minor under former Civil Code of Practice).

[14] BLACK'S LAW DICTIONARY (8th ed. 2004) defines *agent* as "[o]ne who is authorized to act for or in place of another; a representative . . . ."

[15] *Cozine*, 245 S.W.2d at 937 ("The next friend, therefore, truly is a mere agent of the plaintiff and is regarded as well as the agent of the court, resembling an attorney or guardian ad litem . . . ."). *See also Cowan*, 729 S.W.2d at 189 ("The next friend has traditionally been recognized as a mere agent of the child, as is a guardian ad litem.").

the minor's next friend. Kentucky case law has long boldly proclaimed that the minor "himself is the plaintiff" in cases filed by the minor's next friend.[16]

Unlike a next friend, whose authority is limited to filing suit on the minor's behalf and who lacks the authority to settle the lawsuit, a statutorily appointed guardian has a broader scope of authority and may settle a lawsuit on the ward's[17] behalf with court approval.[18] A guardian is the ward's agent under Kentucky law[19] and, thus, actually represents the ward in any litigation in which the guardian retained the attorney in the capacity as guardian of the

---

[16] *Kash v. Kash's Guardian*, 260 Ky. 377, 85 S.W.2d 866, 867 (1935) ("The next friend is regarded as an agent or officer of the court, of the nature of a guardian ad litem, to represent the interest of the infant in the litigation. The infant himself is the plaintiff.") (citation omitted); *Lambert v. Corbin*, 194 Ky. 373, 239 S.W. 453, 454 (1922) (stating that although under former Civil Code, certain suits on behalf of a minor must be brought on the minor's behalf by a next friend, "in all such cases the infant is himself the plaintiff."). *See also Clements v. Ramsey*, 9 Ky.L.Rptr. 172, 4 S.W. 311, 312-13 (1887) ("Forest Ramsey had been the plaintiff from its inception. He had instituted the action in his name by a next friend, who stood responsible for the costs; but, when he arrived at age, the next friend was no longer a necessary party, and the action abated in fact as to him, and proceeded to judgment in the name of the real plaintiff, and with whom the litigation had been had from the bringing of the action up to the rendering of the judgment.").

[17] KRS 387.010(g) defines *ward* as "a person for whom a guardian, limited guardian, or conservator has been appointed."

[18] KRS 387.125(6) ("A guardian may institute or defend actions, claims, or proceedings in any jurisdiction for the protection of the ward's estate. Subject to the approval of the court in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward. If the action, claim, or proceeding has not been filed in any court, the District Court of the county where a guardian qualified shall approve the settlement or compromise. Upon approval of a settlement or compromise, a guardian may execute a release on behalf of the ward. A guardian shall receive any proceeds from a settlement for management in accordance with the provisions of this statute."). *See also Cowan*, 729 S.W.2d at 189 ("The major difference between a next friend and a statutory guardian is that the latter can compromise and settle claims and enter a binding contract on the minor's behalf and the former [cannot].").

[19] *Powell v. Gossum*, 57 Ky. 179, 1857 WL 4393, at *5 (1857) ("The guardian is no more than an agent provided by law for the ward.").

7

ward. And a guardian's statutory authority to prosecute or defend claims is expressly intended to protect the ward's estate. But the guardian's authority to settle litigation is intended to be on behalf of the ward, not on behalf of the guardian's own interests.[20] In other words, any legal action by the guardian must be to help the ward, not necessarily the guardian.

There are other theories, such as recognizing a duty to the next friend's or guardian's minor or ward as a third-party beneficiary; but it seems clear to us that an attorney in this situation has an attorney-client relationship with, and owes professional duties to, the minor or ward. Perhaps the Georgia Court of Appeals said it best in rejecting an argument that an attorney for a minor plaintiff's *guardian ad litem*[21] owed no duties to the minor plaintiff:

> In this case, defendant acted as the attorney for plaintiff's *guardian ad litem*. But in doing so, he clearly undertook to represent plaintiff's interests. Plaintiff was the real party with the legal interest warranting representation. As the intended beneficiary of the relationship between her *guardian ad litem* and defendant, plaintiff also was in privity with defendant, despite her minority. In cases like this, to suggest that the guardian alone is the

---

[20] KRS 387.125(6) provides, in pertinent part, that: "A guardian may institute or defend actions, claims, or proceedings in any jurisdiction *for the protection of the ward's estate*. Subject to the approval of the court in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding *on behalf of the ward*." (emphasis added).

[21] Similar to a next friend or statutory guardian under Kentucky law, a *guardian ad litem* can bring suit on a minor's behalf under Georgia law. *See* Ga. Code Ann., § 9-11-17(c) which provides, in pertinent part, that:

Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may bring or defend an action on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, he may bring an action by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

attorney's client, and not the minor, is to ignore the *guardian ad litem's* representative capacity and the minor's direct interest.[22]

And we perceive no conflict between an attorney furthering the interests of the minor or ward and any duties the attorney would owe the person who retained the attorney in the capacity as next friend or guardian. The role of both the next friend and the guardian is to protect and further the minor's or ward's interests.[23] Indeed, not protecting the ward's interests exposes the guardian to potential liability for breach of fiduciary duty and other claims, such as those stated in the Arkansas lawsuit filed against Backus.[24]

While we perceive no conflict between the interests of Stewart as beneficiary and ward and the interests of Backus as next friend and guardian, we recognize the existence of potential conflicts in this case between Stewart's interests and Backus's interests as an individual and as administrator of her deceased son's estate. But the fact that Branham accepted legal representation of these potentially conflicting interests does not negate the duties he owed to Stewart.[25]

---

[22] *Toporek v. Zepp*, 479 S.E.2d 759, 761 (Ga.Ct.App. 1996) (citation omitted).

[23] *See In re Guardianship of Karan*, 38 P.3d 396, 401 (Wash.Ct.App. 2002) (stating that "the legitimate interests of the guardian here are inseparable from those of the ward" in holding that attorneys owed duties to wards to make sure that guardians complied with statutes requiring bonds or blocked accounts).

[24] Of course, we express no opinion on the actual merits of the Arkansas lawsuit.

[25] *See Lebya v. Whitley*, 907 P. 2d 172, 182 (N.M. 1995) (in recognizing that attorney for personal representative in wrongful death case owed "a duty to exercise reasonable care to ensure that the statutory beneficiaries actually receive the proceeds of any wrongful death claim[,]" stating that "[t]he fact that an attorney identifies a conflict, actual or potential, should not, however, in itself negate the duty owed to the statutory beneficiaries.").

Branham argues that finding that attorneys owe duties to the minor wards of their clients serving as next friends or guardians is unnecessary because of the statutory protections provided in these situations. Namely, he points to the necessity of court approval for any settlement of the ward's claim by a guardian[26] and bonding requirements to be set by the courts.[27] Essentially, he argues that given these statutory protections for minors, he was not at fault for not demanding that Backus post a larger bond or provide a surety because it was the district judge's responsibility to require a surety for the protection of the minor. We agree that courts have responsibilities to

---

[26]  KRS 387.125(6) provides, in pertinent, part that: "[s]ubject to the approval of the court in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward."

[27]  KRS 387.070 provides that:

(1) Except as provided in subsections (2) and (3) of this section, no guardian or conservator shall act until the guardian or conservator has been appointed by the proper District Court, and given bond to the Commonwealth of Kentucky with good surety, either corporate or personal, approved by the District Court to faithfully discharge the trust of guardian or conservator. The bond shall be carefully kept by the clerk of the District Court in a book to be provided for that purpose.

(2) A limited guardian shall be exempt from the requirements of subsection (1) of this section.

(3) (a) If the person or entity appointed by the District Court as guardian or conservator is a person or entity nominated pursuant to KRS 387.040, and the will of the parent making the nomination requests no surety on the bond of the guardian or conservator, no surety shall be required on the bond, unless the District Court deems it imprudent to dispense with surety because of a change of circumstances since the will was made or for other good cause.

(b) If the District Court directs that the assets of a ward's estate be deposited in a restricted account as set out in KRS 387.122, the guardian or conservator shall be exempt from giving surety on his or her bond.

(4) No master or other commissioner whose duty it is to settle the accounts of a guardian or conservator, nor judge or clerk of a court, or practicing attorney, shall be accepted as surety on the bond of a guardian or conservator.

10

protect minors; and, perhaps at least in hindsight, the district judge erred in not setting a larger bond or requiring a surety.[28] But the fact that a court and the next friend or guardian also have responsibilities does not relieve an attorney of the duties owed to the real party in interest in the litigation. Rather, these various responsibilities may simply present a factual question as to causation of damages.

Branham also argues that recognizing that attorneys have attorney-client relationships with, and owe duties to, the minors or wards of guardians or next friends may result in representation by two attorneys who may not agree on whether to accept a settlement if the child also has a *guardian ad litem* appointed under KRS 387.305. To be sure, *guardians ad litem* have been regarded as both attorneys and fiduciaries under Kentucky law.[29] But Branham's suggested scenario could not arise under Kentucky law because KRS 387.305(1) makes clear that a *guardian ad litem* is not to be appointed for

---

[28] For a discussion of whether a district judge could be held personally liable for claims resulting from its acts in setting or requiring bonds or surety in light of doctrines of judicial immunity and separation of powers, *see generally Vaughn v. Webb*, 911 S.W.2d 273 (Ky.App. 1995). We express no opinion on any potential liability of the district judge who appointed Backus guardian.

[29] *See Black v. Wiedeman*, 254 S.W.2d 344, 346 (Ky. 1952) (Under old Civil Code of Practice, noting that a *guardian ad litem* was both a minor's attorney and a representative of the court).

a person who already has a guardian,[30] and next friends lack authority to settle claims.[31]

On the other hand, were we to hold that the attorney retained by the individual acting in the capacity as next friend or guardian was not the attorney for the minor or ward, the minor or ward would be unrepresented, which would be contrary to the clear legislative intent to protect minors. Surely the Kentucky General Assembly did not enact a comprehensive legislative scheme concerning appointing guardians to further the "best interest" of minors,[32] yet, intend for these minors to be unrepresented in litigation filed or settled on their behalf.

Branham also argues that since a guardian is a fiduciary, a Kentucky Bar Association ethics opinion (KBA E-401, issued September 1997) stating that the attorney represents the fiduciary, not the estate or beneficiaries, is applicable. But this ethics opinion specifically addresses "the lawyer's responsibilities to the beneficiaries of estates and trusts" and does not specifically apply to a minor's guardian or next friend. This ethics opinion is

---

[30] KRS 387.305(1) states: "No appointment of a guardian ad litem shall be made . . . until an affidavit of the plaintiff, or of his attorney, be filed in court, or with the clerk, showing that the defendant has no guardian, curator, nor conservator, residing in this state, known to the affiant."

[31] *Cowan*, 729 S.W.2d at 189.

[32] *See, e.g.*, KRS 387.032 ("the District Court shall appoint any person or entity whose appointment would be in the *best interest* of the minor . . . .") (emphasis added); KRS 387.090(1)(b) (providing for removal of guardian if deemed in the minor's "best interest" by the District Court).

not binding on us in this context;[33] and we think that Stewart raises a valid point that guardians are only obligated to work for the benefit of one person (the ward), rather than trustees or executors who may owe duties to beneficiaries with conflicting interests. So despite Branham's arguments to the contrary, we hold that the attorney retained by an individual in the capacity as a minor's next friend or guardian establishes an attorney-client relationship with the minor and owes the same professional duties to the minor that the attorney would owe to any other client.[34]

Branham urges us to adopt the test stated in RESTATEMENT (THIRD) GOVERNING LAWYERS § 51[35] for determining if lawyers owe duties to minors in

---

[33] The end of the ethics opinion (KBA E-401, September 1997) even quotes Kentucky Supreme Court Rule (SCR) 3.530, "[b]oth informal and formal opinions are advisory only[,]'" although an attorney who acted in reliance on such an opinion shall not be professionally disciplined for doing so if the attorney accurately and truthfully described the proposed professional act, as well as the facts and circumstances leading to the act.

[34] Branham complains in his brief that the Court of Appeals provided no guidance on the extent of an attorney's duty to a minor whose next friend or guardian retained the attorney. But because we hold that a direct attorney-client relationship is formed, we see no need to state exactly what the attorney had a duty to do or not do under the operative facts of this particular case. Rather, those deciding such questions in particular cases should follow, of course, binding authority establishing an attorney's duties to clients. *See, e.g.*, SCR 3.130 (Kentucky Rules of Professional Conduct) (recognizing such duties to clients as diligence, competence, communication, and confidentiality).

[35] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 (2000) (Duty of Care to Certain Nonclients) states:

For purposes of liability under § 48 [Professional Negligence], a lawyer owes a duty to use care within the meaning of § 52 [Standard of Care applicable in Professional Negligence and Breach of Fiduciary Duty cases] in each of the following circumstances:

(1) to a prospective client, as stated in § 15;

(2) to a nonclient when and to the extent that:

13

these situations. But this test expressly applies to determining if a lawyer owes a duty to a non-client, third-party beneficiary. Because we have found that the attorney in these situations does have an attorney-client relationship with the minor ward, this test is not applicable.

C. No Reason for Limiting This Holding to Apply Prospectively.

This is a matter of first impression in Kentucky, but we see no reason to limit our holding to apply prospectively as Branham argues. Rather, we find it clear that Branham owed, and should have known he owed, duties to the minor whose interests he and the next friend and guardian were obligated to advance and protect. While we may occasionally exercise our discretion to

---

    (a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and

    (b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;

  (3) to a nonclient when and to the extent that:

    (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

    (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and

    (c) the absence of such a duty would make enforcement of those obligations to the client unlikely; and

  (4) to a nonclient when and to the extent that:

    (a) the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;

    (b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach;

    (c) the nonclient is not reasonably able to protect its rights; and

    (d) such a duty would not significantly impair the performance of the lawyer's obligations to the client.

14

make application of a holding prospective only,[36] we, nonetheless, generally embrace the idea that although legislation may only apply prospectively, judicial decisions generally apply retroactively.[37] And we have generally made decisions prospective only when overruling old precedent upon which the losing party has relied.[38] This case does not overrule precedent so we see no reason to limit application prospectively. In fact, under longstanding precedent regarding next friends and guardians as minors' agents and the minors involved as the real parties in interest in lawsuits filed or settled on their behalf, we think it was abundantly clear that an attorney retained by an individual in the capacity as the next friend or guardian of a minor owed professional duties to that minor. So we decline to hold this opinion operates only prospectively.

---

[36] *See Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991) ("It is within the inherent power of a Court to give a decision prospective or retrospective application. It is further permissible to have a decision apply prospectively in order to avoid injustice or hardship. This is true where property rights are involved and parties have acted in reliance on the law as it existed, and a contrary result would be unconscionable.") (citations omitted).

[37] *See United States v. Security Industrial Bank*, 459 U.S. 70, 79 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student.").

[38] *See Lasher v. Commonwealth ex rel. Matthews*, 418 S.W.2d 416, 419 (Ky. 1967) ("The chief reason for denial of retrospective application has been to preserve property rights acquired in reliance upon the law that is being changed by the new decision. Another reason has been to prevent confusion and expense arising from the unsettling of matters deemed to have been settled under the old law.") (citation omitted).

D. **We Express No Opinion on Whether or When Attorney-Client Relationship Came to an End.**

Because the existence of an attorney-client relationship between Branham and Stewart is the principal issue addressed by the parties to this appeal, the parties did not address arguments to the duration of the attorney-client relationship that we, by today's holding, have found to exist. We will attempt, nevertheless, to address briefly any concern about the terminus of the attorney's duties to any minor or ward retained by a next friend or guardian to pursue legal action on behalf of the minor or ward.

While we reject the argument that no attorney-client relationship was ever formed between Branham and Stewart, we do not hold that the attorney-client relationship in this or similar cases automatically continues indefinitely; and we express no opinion whether the attorney-client relationship had ceased by the time of any of the alleged actions for which Stewart aims to hold Branham responsible. In granting summary judgment for Branham based on its perception of a lack of recognition of a cause of action for a minor or ward against the attorney retained by the next friend or guardian to pursue legal action on behalf of the minor or ward, the trial court seemingly found that no attorney-client relationship ever existed. Accordingly, the trial court never issued any explicit findings about whether or when such an attorney-client relationship had ceased. It would be improper for this Court to make any factual findings concerning whether or when the attorney-client relationship

16

ceased. Rather, cessation of the attorney-client relationship is a matter of proof[39] for the trial court. While we express no opinion on whether or when the attorney-client relationship ceased because the issue is not properly before us, in no way does our opinion foreclose inquiry into this issue upon remand.

## IV. CONCLUSION.

We affirm the opinion of the Court of Appeals reversing the summary judgment granted by the trial court in Branham's favor. But in reversing the trial court's summary judgment, we express no opinion on the ultimate merits of Stewart's legal malpractice and breach of fiduciary duty lawsuit against Branham because we do not reach the questions of whether breach, causation, and damages are established by the facts in the case.

All sitting. Abramson, Noble, Schroder, and Venters, JJ., concur. Scott, J., dissents by separate opinion in which Cunningham, J., joins.

SCOTT, J., DISSENTING: I must respectfully dissent from the majority's opinion extending the attorney-client relationship with a guardian to the ward of the guardian actually represented. I do so for several reasons.

Firstly, opening of this "door" will invite greater extensions. *See Fickett v. Superior Court of Pima County*, 558 P.2d 988 (Ariz.App. 1976) (conservator of incompetent's estate brought action against attorney for former guardian

---

[39] Proof of cessation of representation might include motions or orders of withdrawal from representation, letters to clients advising that representation has been concluded, or court documents showing that the attorney is no longer listed as attorney of record, although we do not suggest that this list is exclusive or that the existence of any of these listed documents, standing alone, automatically proves cessation of the attorney-client relationship in every context.

alleging that attorney was negligent in failing to discover that guardian had embarked upon scheme of misappropriation, conversion, and improper investment of ward's estate); *Pelham v. Griesheimer*, 440 N.E.2d 96 (Ill. 1982) (children brought malpractice action against an attorney who represented mother in divorce case and allegedly failed to ensure that children remained beneficiaries on father's life insurance policy, as required by divorce decree); *Scholler v. Scholler*, 462 N.E.2d 158 (Ohio 1984) (action on behalf of minor child against mother's attorney who allegedly negotiated and prepared the child support provisions in mother's separation agreement); *Metzker v. Slocum*, 537 P.2d 74 (Or. 1975) (action upon behalf of minor child against attorney retained by husband and wife to perfect adoption of minor, which attorney allegedly failed to perfect, leading to minor's loss of support upon divorce).

Secondly, it introduces an expensive complexity into litigation for minors that is unjustified given its infrequency and the fact that matters related to guardianships are committed to the exclusive supervision of the courts. "Where [the] legal disability of the individual is shown, the jurisdiction of the court is plenary and potent to afford whatever relief may be necessary to protect his interests and preserve his estates." *DeGrella By and Through the Parent v. Elston*, 858 S.W.2d 698 (Ky. 1993) (*citing Strunk v. Strunk*, 445 S.W.2d 145, 147 (Ky. 1969). "The court's action in such a case is not limited by any narrow bounds, but it is empowered to stretch forth its arm in whatever direction its aid and protection may be needed." *Strunk*, 445 S.W.2d

at 147; *see also* KRS 387.070 ("[N]o guardian or conservator shall act until the guardian or conservator has been appointed by the proper District Court, and given bond to the Commonwealth of Kentucky with good surety, either corporate or personal, approved by the District Court to faithfully discharge the trust of guardian or conservator."); KRS 387.122 ("The District Court may direct that all or some part of the assets of a ward's estate be deposited in a bank . . . subject to withdrawal by the guardian or conservator only upon authorization of the District Court."); KRS 387.125(6) ("Subject to the approval of the court . . . a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward."); KRS 389A.010(1)(a) ("Any trustee, guardian, conservator, or personal representative . . . not otherwise possessing a power of sale, may move the District Court of the county in which the fiduciary has qualified for an order granting the fiduciary the power to sell or mortgage any real estate or any interest therein possessed by his ward, decedent, or trust.").

Moreover, such an extension will necessarily endanger the finality of a guardian's decisions even though approved by a court, as well as extend, by several multiples, the attorneys necessary to represent a parent/guardian with multiple children/wards, not to mention the additional attorney necessary for the parent's personal claims. With such a "cast of counsel" imposed on one lay parent — each arguing for inconsistent results — how can one realistically

19

expect our current statutory scheme to function inexpensively and expeditiously?

Here, Vicky Backus (Backus) retained Appellant, Ira Branham (Branham), to represent her in litigation stemming from an automobile accident, which killed her ex-husband, Gary Stewart (Stewart), and her minor son, Adam Stewart (Adam). Her minor son, Gary Ryan Stewart (Gary Ryan), was severely injured but survived the accident. Branham was hired by Backus to represent her in all her various capacities. First, Branham was hired to represent her on her individual claims. Secondly, Branham was hired to represent her as Administrator of Adam's estate.[1] Thirdly, Branham was hired to represent her as next-friend, and later as guardian, for Gary Ryan.

On August 14, 1997, Branham filed the suit on behalf of Backus individually, as administratrix of Adam's estate, and as next-friend of Gary Ryan, a minor. Several months later, on December 17, 1997, an application and petition for Backus's appointment as guardian for Gary Ryan was filed in the Pike District Court.[2] The reasons given for the appointment were: "Gary Ryan Stewart has acquired interest in real property in Pike County which is going to be sold and a guardian must sign the deed." The Pike County District

---

[1]  She was also the beneficiary of Adam's estate. *See* KRS 391.010(2) and KRS 391.030(1).

[2]  The application and petition were filed on AOC forms 852 and 853. The application and petition for guardianship disclose that both Backus and Gary Ryan resided in Arkansas. *In re: Estate of Gary Ryan Stewart, a minor*, Pike District Court Probate Case No. 97-P-000687. The complaint filed herein also alleges that both Backus and Gary Ryan resided in Scott County, Arkansas, and that the funds ultimately received through the settlement of the personal injury action for the benefit of Gary Ryan were sent or delivered to her in Arkansas.

Court guardianship record discloses an order setting the matter for hearing at 4:00 p.m. on December 23, 1997. It also discloses an order appointing Backus and setting the bond at "$5,000.00 w/o surety."[3] The order appointing and setting the bond was signed on December 23, 1997, but not entered until January 5, 1998.

In addition, attorney Michael Lucas was appointed *guardian ad litem* to represent Gary Ryan in regards to the proposed sale of his interest in the real estate. His report recommending approval of the sale was filed January 29, 1998. Thus, at its inception, the guardianship proceeding was an "adversary" proceeding. *See* KRS 389A.010(4) (right of appeal to circuit court in adversary proceedings). Thereafter, the sale of Gary Ryan's real estate was approved by the court with the net proceeds therefrom, payable upon behalf of Gary Ryan, being in the amount of $2,000.

Several months later, an agreement was reached to settle the multi-party wrongful death and personal injury suit for $1.3 million dollars, with $325,000.00 to be payable to Backus individually;, $325,000.00 to be payable to Adam's estate; and $650,000.00 to be paid for the benefit of Gary Ryan.[4] On

---

[3] The order is entered on a typed AOC form 854 with three (3) handwritten entries in the blanks, as provided on the form. The case number is written in on the top of the form in blue ink; whereas, the district judge's signature and date and the notation on the bond, "5,000.00 w/o surety," are written in black ink.

[4] Of this $650,000.00, $150,000.00 was withheld for medical bills and later resolved for less; $82,863.97 was later disbursed to Backus on behalf of Gary Ryan; $300,000.00 was placed into a structured annuity for Gary Ryan; and that part of the additional $200,000.00 remaining after attorney's fees was disbursed to Backus upon behalf of Gary Ryan. The record available does not disclose how much of the $200,000.00 remained to be disbursed.

March 31, 1998, a petition was filed in Gary Ryan's guardianship action to approve the settlement of his personal injury claim disclosing the stated settlement amount of $650,000.00. It was approved by order of the same date. However, the bond "$5,000.00 w/o surety" was not increased, nor was surety added. Thereafter, Backus failed to file any accountings in the guardianship proceedings and allegedly dissipated the funds disbursed to her upon behalf of Gary Ryan. Suit was ultimately filed against Backus in Arkansas, but less than the full amount allegedly paid to her upon behalf of Gary Ryan was recovered. This action followed, alleging Branham failed to divide the money properly and failed to safeguard the money given Backus on Gary Ryan's behalf.

Given the majority's extension of the attorney-client relationship on the facts at hand, a future guardian, such as Backus, will not be able to rely upon the advice of one (1) counsel in navigating the myriad number of issues she will face in resolving multi-party, multi-issue litigation. Due to the inherent conflict now created for counsel, she will need three (3) attorneys: one for her individual claims, another to advise her as administratrix of Adam's estate, and a third to advise her as next friend/guardian on Gary Ryan's claims — each of which counsel must necessarily, by virtue of our loyalty rule, be solely devoted to maximum benefits for the single interest they represent. One could only imagine the difficulties this will present in the decision-making process for lay people, whether parents or not, who must handle these various fiduciary

positions. It not only increases the complexity of litigation involving minors and other beneficiaries but inhibits the fundamental precept embodied by the court's mandatory supervision of a guardian's actions and decisions.

Certainly,

> [t]he citadel of privity is under . . . attack. The potency of attack is rooted in modern tort law's goal of providing maximum recovery to injured parties and placing the risk of loss among those thought to be most able to bear the cost. However, the attack on privity threatens to impose upon the attorney [and the legal process] more than just increased exposure to liability; he or she increasingly faces a real ethical dilemma.

*Keybank Nat. Ass'n v. Shipley*, 846 N.E.2d 290, 300 (Ind.App. 2006). "When lawyers must be conce[r]ned about their potential liability to third parties, the resultant self-protective tendencies may deter vigorous representation of the client. Attention to third-party risk might cause the attorney improperly to consider 'personal interests' or 'the desires of third parties' above the client's interests. This would contravene the lawyer's duty of loyalty to the client." *Id.* *Citing* JACK I. SAMET, ET AL., *THE ATTACK ON THE CITADEL OF PRIVITY*, 20 A.B.A. Winter Brief 9, 40 (1991). And "[l]oyalty is an essential element in the lawyer's relationship to a client." *Baker v. Coombs*, 219 S.W.3d 204, 209 (Ky.App. 2007) (*citing Kentucky Rules of the Supreme Court* ("SCR") 3.130, Rule 1.7, Comment 1).

The "unavoidable tension between these ethical standards on the one hand, and the fear of exposure to malpractice liability to non-clients on the other, is an issue that must be confronted and dealt with squarely." *Shipley,*

23

846 N.E.2d at 300. And in resolving such a dilemma, we cannot ignore the inherent difficulties and expense of commanding multiple counsel. "It is well recognized that a fiduciary relationship exists between an attorney and a client, and the attorney owes the client the utmost fidelity, honesty[,] and good faith. An attorney [should owe] a duty to a nonclient only in the most limited circumstances." *Grimes v. Saikley*, 904 N.E.2d 183, 194 (Ill.App. 2009).

Under our previous precedents, although a legal malpractice claim may accrue only to the attorney's client, "an attorney still may be liable for damages to a third party because of events arising out of his representation of a client if the attorney's acts are fraudulent or tortious and result in injury to that third person." *Coombs*, 219 S.W.3d at 208-09; *Rose v. Davis*, 157 S.W.2d 284, 284-85 (Ky. 1941), *overruled on other grounds by Penrod v. Penrod*, 489 S.W.2d 524 (Ky. 1972); *see also Klancke v. Smith*, 829 P.2d 464, 466-67 (Colo.App. 1991) ("An attorney is charged with a duty to act in the best interest of his or her client, and in fulfilling this obligation, the attorney is liable for injuries to third parties only for conduct that is fraudulent or malicious.") (citations omitted). And certainly, "[s]uch liability may be found to exist where the attorney is responsible 'for damage caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity[.]'" *Coombs*, 219 S.W.3d at 209 (*quoting Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky.App. 1978). Yet, the application of this doctrine demands that the representation be "primarily and directly intended to benefit" the party claiming injury. *Id.* Any

contrary rule creates a conundrum for attorneys under SCR 3.130, Rule 1.7 (July 15, 2009). Under this rule, of course, each affected client can give "informed consent, confirmed in writing." SCR 3.130, Rule 1.7(b)(4). Yet, a child cannot meet such a standard.

Here, the problem was the bond. It was too low and lacked a surety. Yet, "[t]o hold an attorney responsible for the damages occasioned by an erroneous judicial order, even though the error be induced by him, would make the practice of law one of such financial hazard that few men would care to incur the risk of its practice." *Rose*, 157 S.W.2d at 285. *Rose* involved an action by a former husband against the wife's attorney to recover alimony improperly paid due to an erroneous court order directing such payments. Although the impropriety of the payments was evident, the court in *Rose* upheld the dismissal of the claim against the attorney, finding that:

> It does not appear from the petition that appellee made any false representations to the court or concealed any facts from the court in order to obtain the rulings of which complaint is made. On the other hand, the chancellor had before him all material facts in the case, and, with full knowledge of all the facts, rendered judgment . . . .

*Id.* at 285. That being said, "[a] false or fraudulent, and collusive, decision is beyond the power of a court to approve." *Elston*, 858 S.W.2d at 710. Thus, the court in *Revill v. Pettit*, 3 Met. 314, 60 Ky. 314, 1861 WL 5630 (1860), upheld the liability of an attorney for his participation with the court in a wrongful proceeding. *See also Wood v. Weir*, 5 B.Mon. 544, 44 Ky. 544, 1845 WL 3330

(1845). Yet, this action — and the majority's opinion — is not based upon or limited to allegations or collusion of fraud.

That being said, I recognize the majority's reliance upon precedent from other states — specifically *Leyba v. Whitley*, 907 P.2d 172, 182 (N.M. 1995), *Toporek v. Zepp*, 479 S.E.2d 759, 761 (Ga.App. 1996), and *In re Guardianship of Karan*, 38 P.3d 396, 401 (Wash.App. 2002) — as well as other cases un-cited, such as *Pederson v. Barnes*, 139 P.3d 552 (Alaska 2006), *Jenkins v. Wheeler*, 316 S.E.2d 354 (N.C.App. 1984), and *Estate of Treadwell ex rel. Neil v. Wright*, 61 P.3d 1214 (Wash.App. 2003).[5] However, each of these cases involved only one attorney, one guardian, and one ward. Here, we have multiple relationships and issues with Branham representing Backus in her individual capacity, as administratrix of her deceased son Adam's estate, and as next friend/guardian for Gary Ryan's injuries; guardianship began with the sale of Gary Ryan's interest in real estate, a proceeding recognized as

---

[5]  Notwithstanding the majority's reliance upon several of these cases, it seems to base its extension of the attorney-client relationship on agency law, rather than the multi-factor balancing test or intended third-party beneficiary test relied upon in the cases it cites. However, a guardian is no more a servant to the ward, than a regent is to a young king-to-be. Their power to act does not come from a master-servant relationship but, rather, from the state. "The relationship of guardian to ward is not that of agent to principal. The guardian's authority is not derived from the ward, but from the appointing court for which the guardian acts as agent, exercising those powers conferred by statute or by the court." *Mack v. Mack*, 618 A.2d 744, 750 (Md.App. 1993) (citation omitted). "'In reality the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility.' The administration of guardianship affairs remains subject to judicial control by the equity court that appointed the guardian." *Id.* (citations omitted). In *Southard v. Steele*, 3 T.B.Mon. 435, 19 Ky. 435, 1826 WL 1336 (1826), the court acknowledged that "[a] guardian represents the ward for whom he acts, and is his general agent; yet if he submits to a reference, as he may do, for the infant, he binds himself thereby and not the infant. . . . A court of chancery will not decree an award to bind the infant." *Id.* at *6.

adversarial by statute. *See* KRS 389A.010(4). Thus, a *guardian ad litem* was appointed to represent him individually. While a quasi-extension of the attorney-client relationship might work in single issue, single ward cases, it is not a practical solution in multi-party, multi-issue litigation for the reasons pointed out.

A better analysis is provided within the context of the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 (2000). Subsection 4 negates a duty of care to a non-client unless, "such a duty would not significantly impair the lawyer's performance of obligation to the client." *Id.* The RESTATEMENT goes on to state:

> A lawyer representing a client in the client's capacity as a fiduciary (as opposed to the client's personal capacity) may in some circumstances be liable to a beneficiary for a failure to use care to protect the beneficiary. The duty should be recognized *only* when the requirements of Subsection (4) are met and when action by the lawyer would not violate applicable professional rules.

*Id.* at 363 (emphasis added). The RESTATEMENT specifically sets forth a similar analysis when it states in § 51:

> A lawyer owes no duty to a beneficiary if recognizing such duty would create conflicting or inconsistent duties that might significantly impair the lawyer's performance of obligations to the lawyer's client in the circumstances of the representation. Such impairment might occur, for example, if the lawyer were subject to liability for assisting the fiduciary in an open dispute with a beneficiary or for assisting the fiduciary in exercise of its judgment that would benefit one beneficiary at the expense of another. For similar reasons, a lawyer is not subject to liability to a beneficiary under Subsection (4) for representing the fiduciary in a dispute or negotiation with the beneficiary with respect to a matter affecting the fiduciary's interests.

*Id.* at 365. This is consistent with KBA Ethics Opinion E-401, which states, "[a] lawyer who represents a fiduciary . . . stands in a lawyer-client relationship with the fiduciary and not with respect to the fiduciary's estate."[6]

Thus, for the grounds stated, I must dissent from the majority's opinion extending Branham's attorney-client relationship to Gary Ryan in violation of his attorney-client relationship with Backus.

Cunningham, J., joins this dissenting opinion.

---

[6] *See* Kentucky Bar Association Ethics Opinion E-401 ("The fact that a fiduciary has obligations to the beneficiaries of the trust or estate does not in itself either expand or limit the lawyer's obligations to the fiduciary under the rules of professional conduct, nor impose on the lawyer obligations towards the beneficiaries that the lawyer would not have toward other third parties.").

COUNSEL FOR APPELLANTS:

David C. Stratton
Stratton, Hogg & Maddox, PSC
P. O. Box 1530
Pikeville, Kentucky 41502-1530

Herman Michael Lucas
Miller Kent Carter & Michael Lucas, PLLC
131 Division Street
P. O. Box 852
Pikeville, Kentucky 41502


COUNSEL FOR APPELLEE:

John J. Mueller
John J. Mueller, LLC
The Provident Building
Suite 800
632 Vine Street
Cincinnati, Ohio 45202-2441